No. 24.—Doe ex dem. VAUGHN, administrator of JENKINS, plaintiff in error, *vs.* L. M. BIGGERS, defendant.

[1.] To admit secondary evidence of the contents of a paper, its existence must be proven, and its destruction or loss.

[2.] Where the loss of a paper is relied upon, the law does not require positive proof of loss, but proof sufficient to raise a reasonable presumption of loss.

[3.] It is the province of the Court to determine whether the loss is sufficiently proven to admit secondary evidence.

[4.] Before secondary evidence can be admitted, the party will be required to show that he has, in *good faith*, exhausted, in a *reasonable degree*, all the *sources of information and means of discovery*, which the *nature of the case suggests and which were accessible to him.*

[5.] When a paper is traced into the hands of a person, reasonable diligence must be used to procure the testimony of that person, before secondary evidence is admissible. When a paper is known to be in the possession of a person without the jurisdiction of the Court, whether, for that reason, secondary evidence may not be admitted? Quere.

[6.] When a Magistrate's execution is lost, and its contents proven, and also the levy on the land by a Constable, and a return of the same to the Sheriff, the Court will presume that there was also on it, the Constable's entry of "no personal property to be found," &c.

[7.] The general rule is, that when an officer is required to do an act, the omission to do which would make him guilty of a culpable neglect of duty, it ought to be intended that he has duly performed it, unless the contrary is made to appear.

[8.] The rule as to the *degree* of secondary evidence is this—where there is no ground for the presumption that better secondary evidence exists, any proof is received which is admissible by the other rules of law, unless the objecting party can show that better evidence was previously known to the other party, and might have been produced.

[9.] Presumption of the loss of a paper may arise from lapse of time, which will be taken into account in determining the question of diligence in the search. A deed to land sold by the Sheriff, under a Justice's Court *fi. fa.* will be admitted in evidence, upon proof of the loss of the *fi. fa.*, the levy and sale

Doe ex dem. and Vaughn *vs.* Biggers.

and upon proof, by presumption, that the entry of the Constable who made the levy, of "no personal property to be found," &c. was made on it. This case shown not to conflict with the case of *Hopkins vs. Burch,* 3 *Kelly,* 222.

[10.] When the answer of a witness is written without punctuation, the best rule is to read it so as to make sense of each and every part; to connect such parts as will be, when joined together, susceptible of an intelligible meaning; and if a proposition or statement becomes absurd by connection, to let it stand as an independent statement.

Ejectment, in Muscogee Superior Court. Tried before Judge ALEXANDER, November Term, 1848.

An action of ejectment was brought in Muscogee Superior Court, upon the demise of Jonathan D. Vaughn, as the administrator of Bartholomew Jenkins, deceased, against Lorenzo M. Biggers. The defendant set up title, under a Sheriff's deed, purporting to have been made after sale under *fi. fa.* against one Bartholomew Jenkins.

Pending the trial, the defendant offered in evidence the interrogatories of Lewis Wynn, who swore that, "while Sheriff of Harris County, Georgia, lot of land No. 276, (the premises in dispute,) was levied on by a Constable, and duly returned to witness, according to law, and he sold the same accordingly, and that, on examination, he finds the annexed a true copy of the deed executed by him, on the day and at the place therein specified. He sold said land to the highest bidder—one Waits becoming the purchaser—by virtue of a *fi. fa.* issued from a Justice's Court in Coweta County, in favor of William Daniel *vs.* Bartholomew Jenkins, and is now under the impression he handed over [said *fi. fa.* to said Daniel."

To this testimony plaintiff's counsel objected, but was overruled by the Court.

Plaintiff's counsel objected, also, to the reading of the deed from Lewis Wynn to Waites, without the production of the *fi. fa.* but was overruled by the Court.

The proof showed, that Daniel had removed from the State of Georgia, either to Texas or Louisiana; and Col. H. Holt testified that, as the counsel for Biggers, he had addressed several letters to different persons in Louisiana and Texas, in order to find out the residence of Daniel, without any success.

It was in evidence that Biggers had made search for the *fi. fa.*

Doe ex dem. and Vaughn *vs.* Biggers.

and the judgment on which it was founded, in the district where it purported to have been issued, and also in the offices of the Clerks of the Inferior and Superior Courts, without success, and that he had applied to the Magistrates of that district without success.

To the last interrogatory to Robert S. Foster, he answered: "In relation to what will benefit the defendant, I will say, that from my knowledge of said Jenkins' business and affairs, I think said Jenkins made a contract with a certain William Daniel, when Jenkins and myself were in Bullsborough, in Coweta County, or at some other time; and further, that said Jenkins admitted of executions to issue against him in Coweta County, in favor of William Daniel, and, as I have been informed, the land which he drew in the land lottery of 1827, in Coweta, Muscogee and Carroll lottery, was sold by the Sheriff under said execution, and that said Jenkins received full remuneration in the overplus of said executions, in money, and, also, in a note of the sum of ninety-eight dollars, on William Daniel."

Plaintiff's counsel objected to this answer, and the Court admitted the following: "that said Jenkins admitted of executions to issue against him in Coweta County, in favor of said William Daniel."

The Court charged the Jury, "that in determining the question whether the execution levied on said land had, at the time of the levy, the necessary entries, they might and ought to take into consideration the lapse of time since the levy, the testimony of Mr. Wynn, the admission of Jenkins, as testified to by Foster, and all the other circumstances of the case."

The Jury returned a verdict for the defendant, and the plaintiff moved for a new trial.

1st. Because the Court erred in admitting the testimony of Lewis Wynn, as to the *fi. fa.* under which the land in dispute was sold; the existence, loss or destruction of the same not having been sufficiently established.

2nd. Because the Court erred in permitting the copy deed to be read in evidence, without the production of the *fi. fa.* under and by virtue of which the land was sold, or requiring other proof than that submitted to the Court, of the existence, loss or destruction of said *fi. fa.* and without further proof, also, that said *fi. fa.* had on it, at the time the same was levied, an entry made by a

Doe ex dem. and Vaughn vs. Biggers.

proper officer, that there was no personal property of the defendant's to be found, whereon to levy the same.

3d. In admitting any part of the answer of Robert S. Foster to the last interrogatory.

4th. Because the Court erred in excluding that part of the testimony of the Messrs. Frys, wherein they say, that Jenkins told them that his wife and children were in Gwinnett County, and that he had given in for a citizen's draw in that County, and for a soldier's draw in Patterson's District, of Pike County—this conversation having occurred long before there was any litigation as to this land.

5th. Because the verdict was contrary to the evidence.

6th. Because the Court erred in charging the Jury that, in determining the question whether the execution levied on said land, had, at the time of the levy, the necessary entries, they might and ought to take into consideration the lapse of time since the levy, the testimony of Wynn and Foster, and all the other circumstances of the case.

There were other grounds taken in the motion, but not urged before this Court.

The Court below refused the motion for a new trial, and this refusal is now alleged to be erroneous.

WELLBORN, for plaintiff in error.

JONES, BENNING & JONES, and H. HOLT, for defendant.

WELLBORN, for the plaintiff in error, submitted :

1. That before the secondary evidence taken below, of the existence and entries of the *fi. fa.* that brought the land in dispute to sale, was received, it should have been shown that Daniel, in whose hands Wynn thinks he placed it, and especially the Constable who levied it, had been inquired of.

2. That there was no competent proof of the requisite entry of "no personal property," having been made on the *fi. fa.* Such entry should be satisfactorily proved. 3 *Kelly*, 222.

3. There was no competent proof of the execution of the lost deeds of Wynn to Waits, and of Waits to Hansell, of which copies were permitted to be sent to the Jury.

4. That part of the deposition of Foster, to the effect that "Jenkins admitted of executions to issue against him in favor of William Daniel, in Coweta County," is involved in the same category of incompetency with those portions of it that were rejected. This appears by an examination of the deposition as written.

5. Will not the effect of sustaining this verdict be to introduce into the law of real property, the principle substantially, that lapse of time, for a period less than that fixed by the Statute of Limitations, may create a presumption to the regular paper title? Where is the proof, competent and full, as required by law, in the absence of the statutory bar, to overcome the patent to the land given by the State to Jenkins.

6. But the admission of Jenkins, if made, that "executions issued against him in favor of Daniel, in Coweta County," could, at most, go to the Jury but as evidence of the probable existence of the *fi. fa.* that brought the land to sale; certainly not that it contained upon it the necessary entry of "no personal property," by the Constable in Harris, who levied it, as erroneously charged by the Court.

Again, there was no proof that the land was sold by Wynn within the usual hours of sale, either by the recital of the deed, or otherwise. Without this no title can be deemed to have passed by his sale of the land. 4 *Wheat.* 77. 3 *Kel.* 222. 4 *Georgia Rep.* 148.

H. L. Benning, for the defendant in error.

1. The existence of grants, &c. may be presumed from the adverse possession of the person claiming to be the grantee, or from equivalent circumstances. *Cowen & Hill's Notes, part* 1, 355, '6, '8, '9, 361, '3, '4, 370, '1. 4 *Georgia Rep. Crafts vs. Jackson*, 361, (*6th ground.*) 1 *Kelly*, 381.

2. This adverse possession may be sometimes greater, sometimes less, than the period fixed for a bar by Statutes of Limitation. *Hill & Cowen's notes*, 355, '6, *supra.*

3. In ejectment, if the title of one party comes from a Sheriff's sale, under a *fi. fa.* against the other, proving the *fi. fa.* will be sufficient, without proving the judgment, as the Court, in such

Doe ex dem. Vaughn *vs.* Biggers.

case, will *presume* there must have been a judgment, otherwise the *fi. fa.* would have been set aside.    2 *Greenl. Ev.* §316.

4. A new trial will not be granted, although there may have been exceptionable testimony, if there was sufficient legal evidence without it, and justice has been done.    *Graham N. Trials,* 246, '7, '8, '9.

5. If justice has been done, the Court will not disturb a verdict upon the ground of a technical objection.    *Ib.* 341, '4, '5, '6.    1 *Kelly,* 381.

6. When the Judge who tries the case is satisfied with the verdict, although one against the weight of evidence, the Court will seldom set it aside.    *Graham,* 405, '6, '7, '8.

7. The Jury, and not the Court, is to determine the effect of evidence in raising a presumption.    *Hill & Cowen's notes, part I,* 367.

*By the Court.*—NISBET, J. delivering the opinion.

[1.] The first question I propose to consider is, whether the Court erred in admitting the secondary evidence of the execution under which the land in question was brought to sale.    It was a Justice's Court execution in favor of *Daniel,* against the plaintiff's intestate, *Jenkins.*    The levy on the land was made by a Constable, and the execution was returned to *Wynn,* the Sheriff of the County where it lay, who sold it, and made a deed to the purchaser.    The defendant below claimed title under this levy and sale. Parol evidence was admitted to prove the contents generally, (not, as we shall see, to prove the fact that there was on it the Constable's entry of "no personal property to be found,") of this execution.    The plaintiff in error holds that, under the circumstances of this case, the secondary evidence ought not to have been admitted, because there was not sufficient diligence used in proving its existence, and its destruction or loss.    This execution is not required by law to be recorded.    Justices of the Peace are required to keep dockets, and are presumed to keep a record of judgments, and of the issuing of executions.    An execution which, issuing from a Justice's Court, is levied upon lands or negroes, passes by law into the hands of the Sheriff to be executed.    He is required to keep a docket, with entries of his actings and doings upon all executions which come to his hands, and when they have fulfilled their functions, to return them to the

Court from whence they issued.    There they remain as papers on
file.    The place of deposit of an execution having performed
its office, which issues from the *Superior* Court, is therefore the
Clerk's office of that Court.    So, if it issues from the *Inferior*
Court, the Clerk's office of that Court is the place of its deposit and
legal custody.    Magistrate's Court executions ought to be returned
to the Court from which they issue.    This paper, therefore, is an
office paper, which the law presumes to be on file.

Now, in order to let in secondary evidence of this paper,
its existence must be proved, and its loss or destruction.

[2.] The destruction of the paper, its existence having been
proven, (and slight evidence of its existence is sufficient, 1 *Green-
leaf's Evid.* 623,) being established, secondary evidence will be
admitted.    This case does not turn upon the destruction of the
paper.    If lost, however, secondary evidence will also be admitted.
What diligence in proving its loss is required, is not settled by
any general rule, applicable to every case.    This is impossible, for
the requisite degree of diligence in the search must depend upon
the circumstances of each case.    The question of diligence, there-
fore, is left to the Court.

[3.] It is the province of the Court to determine whether the
loss of the instrument is sufficiently proved to admit secon-
dary evidence of its contents.    1 *Greenleaf's Evid.* 623, 624.
*Page vs. Page,* 15 *Pick.* 368.    There are, however, general
principles settled which apply to most cases of this kind, by which
the Courts are bound.    The law does not require unquestionable
proof of loss.    The object of the proof is to establish a *reasonable
presumption* of the loss of the instrument.

[4.] In general, the party is expected to show that he has, in
good faith, exhausted, in a reasonable degree, all the sources of
information and means of discovery, which the nature of the
case suggests, and which were accessible to him.    Good faith and
reasonable diligence are the requisites, and the diligence must
have reference to the nature of the case.    4 *M. & S.* 48.    6 *T.
R.* 246.    1 *Starkie's Evid.* 336 *to* 340.    2 *South.* 501.    8 *Scott,*
85.    3 *Watts & Serg.* 291.    1 *Greenleaf's Evid.* 624.    See, also,
the numerous authorities cited by *Cowen & Hill, note to Phil.
Evid.* 867, *and* 1 *Greenleaf's Evid.* §84, *note* 2.    Now, in the case
before me, did the party establish, by proof, a *reasonable presump-
tion* of the loss of this execution?    Did he, in good faith, in a

reasonable degree, exhaust all the sources of his information and his means of discovery, having reference to the nature of the case? According to the nature of this case, it was incumbent upon him to apply to the Magistrate's office of the District whence the execution issued, to ascertain if the original, or any record of it, was there. That he did. This execution might have been returned by the Sheriff who sold the land, to the office of the Clerk of the Superior or Inferior Court of the County where the land lay. It was reasonable to search there—and there he made search. It was reasonable that the Sheriff might have retained it, or could give information about it, and therefore he ought, in the exercise of reasonable diligence, to have applied to him; which he did. He also caused inquiry to be made of several of the owners of the land, who bought it prior to himself. The Sheriff, *Wynn*, testified that he was under the impression that, after the sale, he handed the execution to *Daniel*, the plaintiff, and the main point made by the plaintiff's counsel, rested upon the want of diligence in procuring the evidence of that person.

[5.] In relation to *Daniel*, the evidence is, that some twelve or fourteen years ago, he removed to *Cherokee* County, in this State, where he lived until about two years before the trial of the cause, and had removed to *New Orleans*. *Mr. Dougherty*, the witness, testified that he had told the defendant of this. At what time he told the defendant does not appear. Another witness testified, that while acting as agent for the defendant in procuring evidence, he had understood that *Daniel* had removed to *Texas*. It does not appear, from the evidence, that defendant knew that *Daniel* was in the State whilst he remained. Two years before the trial he had left the State. It is farther to be noted, that it is not proven, positively, that he ever had the execution; the witness *Wynn* only testifying that it was his impression that he handed it to him. To another witness, *Wynn* stated, it seems, in a letter to him, that his impression was that he had returned it to the Clerk's office of the Inferior Court of *Coweta County*. Now, this is not to be taken as a case where the paper is clearly traced to a person. That he ever had it, must have been with the defendant a matter of doubt. If it were clearly proven to be in his hands, and he resided out of the State, the authorities are in conflict, whether secondary evidence would not be admissible, upon the ground of his being without the jurisdiction, and not amenable to any pro-

cess of our Courts, either to produce the paper, or to testify.    He might be examined by commission, but no Court in this State could compel him to testify.    Nor are the Courts of Georgia judicially cognisant of the fact, that by the laws of the State where he resides, he could be compelled'to testify in obedience to a commission from our Courts.    This goes upon the same principle that has established the rule, that where a subscribing witness to a deed is without the jurisdiction, secondary evidence is admissible to prove its execution.    See, in favor of the secondary evidence in such a case, *Prince vs. Blackman*, 2 *East*, 250.    *Hodnet vs. Toman*, 1 *Starkie R.* 90.    *Boone vs. Dykes, legatees*, 3 *Monroe*, 532.    *Eaton vs. Campbell*, 7 *Pick.* 10.    6 *Peters*, 352.    Contra, *Townsend vs. Atwater*, 5 *Day*, 298, 306.    *Lewis vs. Beatty*, 8 *Mart. Lou. Rep. N. S.* 287, '8, '9.    9 *Cow.* 115.    It is not necessary for me to express an opinion upon this point.    I therefore express none.    Whether *Daniel*, in fact, had this *fi. fa.* or not, is not clearly proven.    The presumption, too, that he has it still, if he ever had it, may be rebutted.    15 *Pick.* 368.    1 *Hud. & Brooke R.* 748.    The valueless character of this extinct paper to *Daniel*, and the great length of time which had transpired since the sale, might, in this case, rebut the presumption, to some extent, that it is still in his possession.    At least, and so say the authorities, such circumstances will lessen the degree of diligence required in order to let in secondary evidence.    Admitting, however, that diligence was required in this case, to procure the testimony of *Daniel*, it is not a case (inferrable from all the facts detailed) of that nature which required the highest degree of diligence.    It appears that, after learning that he had removed either to *New Orleans* or *Texas*, letters were addressed by the defendant, through his counsel, to him, at both those places, and that no knowledge of his actual residence was obtained.    All the effort made to procure the original paper in this case, raises a reasonable presumption of its loss.    The party seems, in good faith, to have exhausted, in a reasonable degree, his sources of information and means of discovery.    We think the secondary evidence, therefore, of the contents of this execution was properly admitted.

See farther, upon this point, 10 *John. R.* 374.    *Harp. Eq. R.* 243.    2 *Verm. R.* 456.    2 *Blackf.* 228.    3 *McCord*, 322.    1 *Dow & Clark*, 190.    2 *Bay R.* 487.    1 *Wright R.* 305.    ·5 *Conn.* 108.

Doe ex dem. Vaughn *vs.* Biggers.

3 *Brod. & Bing.* 295.   6 *Verm.* 399.   9 *Wheat.* 581.   6 *Gill & John.* 386.    5 *Pick.* 436.   1 *Wright*, 440 *to* 450. 6 *C. & P.* 181. 3 *Mass.* 82.    *Cow. & Hill's Notes*, 844.

[6.] The contents generally of the execution being proven, the Court admitted a copy of the Sheriff's deed to the purchaser of the land sold under it.   The plaintiff objected to the deed going in evidence, because it was not proven, that the execution had upon it the Constable's entry of "no personal property to be found," at the time of the levy on the land.   By the Act of 1811, it is declared that "no Constable shall be authorised to levy on any negro, or negroes, or real estate, unless there is no other personal estate to be found sufficient to pay the debt," &c.   *Prince*, 506. In *Hopkins vs. Burch*, this Court determined, that to make the sale of lands or negroes, under Magistrate's Court executions valid, it must appear, by the Constable's entry on the execution, that there was no other personal property, or that the defendant being in possession, pointed out the land and negroes.   3 *Kelly*, 222. Such an entry, then, was necessary to the validity of this sale, and without it the deed ought to have been repelled.   Under the decision of this Court it was argued, that the defendant claiming title under a sale by virtue of a Magistrate's execution, must show that the entry was on it.   The question is not whether such an entry is necessary.   We hold that it is, and that it constitutes a necessary part of the title.   If the execution had been produced in this case, and there had been no such entry upon it, and the officer could not be had to amend his entry, or if had, could not so amend, the deed ought to have been, under our decision, repelled.   The question now is, whether the existence of the execution having been proven, as well as its loss, and its contents having been proven by parol—that is to say, the execution and the levy on the land by the Constable, being before the Court, by parol, will not the Court presume from these facts, that the Constable made the entry of *no personal property to be found*, before levying on the land?   It is a question of evidence from presumption.   The witness who proves the execution and the levy, says nothing about this entry whatever.   Were it proven not to have been on it, then the case would be as if the execution itself had been produced without the entry on it.   The question is not, again, whether there was or was not personal property sufficient to pay the debt.

[7.] But it is whether the Constable made upon the lost execution the necessary entry. We think that the deed was well admitted, because we think that the presumption of the law is, that the Constable, a sworn officer, did his duty, and that there was such an entry on the original execution.

The presumption is that the entry was made, until the contrary is made to appear. The burden of proof, by the rule of presumption, is cast upon the other side. The general rule is, that when an officer is required to do an act, the omission of which would make him guilty of a culpable neglect of duty, it ought to be intended that he has duly performed it, unless the contrary be shown. *Phil. Evid.* 151. 3 *East*, 182. 10 *East*, 216. *Peake's Evid.* 5. *Buller, N. P.* 298. 3 *Wils.* 362. 2 *Black. R.* 852. 11 *John. R.* 517. 19 *John. R.* 347.

The act required of the Constable in this case is one, the omission of which would make him guilty of the most serious neglect of duty—an act upon which the title of lands or negroes might, *does* in this case, depend. So serious is the required act, that a levy upon lands or negroes without it, would subject him to liability as a trespasser. It is not our business to inquire into the probabilities, as a mere question of fact, whether an ignorant Constable has done his duty. We look upon him as an officer of the law, and are to be governed by the same general rules, whether he be a wise man or a fool. In *Hartwell vs. Root*, a Sheriff was presumed to have made a levy. *Woodworth, J.* said, " The question in this case is, whether it is not to be presumed, that the defendant made a levy on the property of *Conkling*. The officer acted upon his oath of office. His duty required him to make a levy, and it does not appear that Conkling had any other property besides the horses to satisfy the execution. In such a case, in the absence of positive proof, and against a public officer, the circumstances offered a fair and reasonable presumption that a levy had been legally made." 19 *John. R.* 347. The rule of presumption in that case was applied in favor of the officer. In all cases it would seem to me, that it ought to be applied with greater liberality in favor of purchasers or others, who are affected by his acts. The case of *Jackson ex dem. Sternberg et al. vs. Shaffer*, is strongly to the point. In that case it was decided by the Supreme Court of New York, that where land is sold under a *fi. fa.* and a deed executed by the Sheriff, the Court would presume

that the execution had been levied.    This, in favor of the purcha-
ser.    " Another point," said *Van Ness, J.* " was made in behalf
of the defendant, which it is necessary briefly to notice, namely :
that the sale under the judgment in favor of *Ehle*, which is the
foundation of the plaintiff's title, is void, because it is not shown
that there had been a previous levy by the Sheriff.    It no where
appears that there had not been a levy.    And, if it were neces-
sary, the Court would, under the circumstances of this case, pre-
sume it to have been made."    11 *John. R.* 517.

The two cases last referred to *presume a levy*—an act necessary
to the validity of a sale.    We do not, in this case, presume a levy,
but a preliminary official act, which is also necessary to the vali-
dity of the sale, but not more necessary than a levy.    I appre-
hend that the rule will be found general, that officers acting under
oath, or in whom the Government reposes a trust, are presumed
to have done their duty until the contrary appears.    In favor of
this general rule, see the following cases: *Hickman vs. Boffman,*
*Hardin's R.* 348.    *Beeler's Heirs vs. Bullitt's Heirs*, 3 *Marsh. K.
R.* 280.    *Tupper vs. Taylor*, 6 *Serg. & Rawle*, 173.    2 *Gall. R.*
15.    *Marsh vs. Lawrence*, 4 *Cowen R.* 461.    6 *Ib* .276. 3 *Monroe,*
211.    *Ib.* 271.    3 *J. J. Marsh.* 226.    3 *Gill. & John.* 350.    3 *N.
Hamp. R.* 310.    5 *Litt. R.* 19.

The best evidence in this case clearly would be, under the deci-
sion in *Hopkins vs. Burch*, the execution with the entry thereon,
that being lost, secondary evidence as to the entry is admissible.
Now the *highest degree* of secondary evidence is not required.

[8.] The rule upon that point is this—when there is no ground
for legal presumption that better secondary evidence exists, any
proof is received which is not inadmissible by other rules of law,
unless the objecting party can show that better evidence was pre-
viously known to the other, and might have been produced; thus
subjecting him, by positive proof, to the same imputation of fraud,
which the law itself presumes, when primary evidence is with-
held.    Whether the highest secondary evidence ought not to be
produced, it is true, has been a mooted question.    But the weight
of authority is in favor of the rule as I have stated it.    *Coyle vs.
Coyle*, 6 *C. & P.* 81.    *Rex vs. Hunt et al.* 3 *B. & Ald.* 566.    6 *C.
& P.* 206.    3 *Scott, N. R.* 577.    *Doe d. Gillbert vs. Ross*, 8 *Dowl.*
389.    7 *M. & W.* 102, *S. C.*    *Gilbert's Evid. by Lofft. p.* 5.    8 *C.
& P.* 502.    2 *M. & Rob.* 138.    10 *Watts*, 63.    9 *Wheat.* 582 *to*

587: 2 *Halst.* 46 to 53. 2 *Mason,* 464. 1 *Greenl. Evid.* §84, *note* 2. As there was no better evidence of the fact to be proved, shown to exist, and within the knowledge of the defendant, it was proper to admit evidence by presumption. The rule of presumption would apply, however, irrespective of the peculiar circumstances of this case—they render its application free from doubt.

[9.] The Court instructed the Jury that, in determining the question whether the entry was on the *fi. fa.* they should take into consideration the lapse of time since the levy, the testimony of *Wynn,* the admissions of *Jenkins,* the plaintiff's intestate, and all the circumstances of the case ; and this charge is excepted to. If it was right to admit secondary evidence of the *fi. fa.* at all, then it was proper for the Jury to consider of it. They were the judges of that evidence. *Jenkins'* admission went to prove the existence of the execution. *Wynn's* testimony to prove its contents generally, the levy, and sale, and the deed. Lapse of time is a circumstance from which its loss may be inferred. The presumption that an officer has performed his duty, is a legal presumption, drawn by the Court; yet, as in this case, it could not be drawn but upon the establishment of the loss of the execution, all the circumstances going to show the loss were properly submitted to the Jury. Presumption of loss of a paper may arise from lapse of time, which will be taken into account, in determining the question of diligence in the search. *Per Story, J. in Patterson vs. Wynn,* 5 *Peters R.* 242, '3. 1 *Greenl. Evid.* §20.

[10.] A motion was made to the Court to exclude the following answer of a witness, (*Foster,*) to wit : "In relation to what will benefit the defendant, I will say, that from my knowledge of said *Jenkins'* business and affairs, I think said *Jenkins* made a contract with a certain *William Daniel,* when *Jenkins* and myself were in *Bullsborough, Coweta County,* or at some other time ; and farther, that said Jenkins admitted of executions to issue against him in favor of said *William Daniel,* and as I have been informed, the land which he drew in the land lottery of eighteen hundred and twenty-seven, in the *Coweta, Muscogee* and *Carroll* lottery, was sold by the Sheriff under said executions, and that said *Jenkins* received full remuneration in the overplus of said executions in money, and also in a note of the sum of ninety-eight dollars on *William Daniel.*" The Court, upon this motion, excluded all of

this answer of the witness, except the following: "that said *Jenkins* admitted of executions to issue against him in *Coweta* County, in favor of said *William Daniel.*" The admission of this part of the answer is complained of as being erroneous. The argument in favor of its inadmissibility is, that it stands connected in the answer with the first members, to wit: "*From my knowledge of said Jenkins' business and affairs, I think said Jenkins made,*" &c. and being so connected, the admitted part is to be taken as a statement dependent upon witness' *knowledge of the business and affairs of Jenkins,* and not sworn to positively, but presented as the *thought* or opinion of the witness. This is the whole of the argument in favor of the exception. If the connection and dependence asserted do exist, it is clear that the testimony is illegal, and not otherwise. The answer of this witness is written without regard to punctuation—the words run continuously. We are, therefore, compelled to construe it, without aid from that quarter. In such a case, the best rule would seem to be to read it so as to make sense of each and every part—to connect such parts as will be, when joined together, susceptible of an intelligible meaning, and if a proposition or statement becomes absurd by connection, to let it stand as an independent statement. Apply this rule to the admitted evidence, and the preliminary statement, "from my knowledge of said Jenkins' business and affairs, I think said *Jenkins,*" &c. and how will the union read? thus: "From my knowledge of said Jenkins' business and affairs, I think said *Jenkins* admitted of executions to issue against him in *Coweta* County in favor of said *William Daniel.*" The witness testifies as to *admissions,* that is, to verbal admissions made by *Jenkins.* Now, as united, he is made to state his *opinion* or *thought* as to verbal admissions made by a man, from his knowledge of his business and affairs. Now is it not very unreasonable to suppose that a witness, any witness, intended to testify as to verbal admissions of another, from his knowledge of his business and affairs? No person with the least possible amount of sense, could be presumed to intend to testify so absurdly. The preliminary part of the answer has its legitimate reference to other parts of the testimony; parts to which it may intelligibly apply—parts, too, which precede that portion which relates to admissions. To them the Court applied the preliminary statement, and considering that the witness intended to confine it to them, held the testimony as to the admis-

sions, as an independent statement. We think this the only rea-
sonable construction to be given to this answer. It is one which
gives an intelligible meaning to the whole of it, and which involves
the witness in no absurdity. Viewed in this light, the testimony
which was admitted, proves admissions of the plaintiff's intestate
against his title, and was legitimate evidence.

One or two other points of error are made in the assignment,
but which seemed to be abandoned in the argument, and upon
which, therefore, I shall express no opinion, only remarking that,
in the judgment of the Court, they were not such as would au-
thorize us, if sustained, to send the case back.

Let the judgment below be affirmed.