## MACK *v.* WESTBROOK, solicitor.

1. Section 20 of the act of the General Assembly, approved March 28, 1917 (Acts 1917, Extraordinary Session, pp. 7, 16), which provides for the condemnation and sale of "All vehicles and conveyances of every kind and description which are used on any of the public roads or private ways of this State, and all boats and vessels of every kind and description which are used in any of the waters of this State in conveying any liquors or beverages, the sale or possession of which is prohibited by law," is not unconstitutional on the grounds (*a*) that it is violative of the due-process clauses of the State and Federal constitutions; (*b*) that it is violative of the provision of the constitution of Georgia which declares that "No conviction shall work corruption of blood, or forfeiture of estate;" (*c*) that it is violative of the constitution of this State, which declares that no special law shall be enacted in any case for which provision is made by an existing general law; (*d*) that it authorizes the taking and damaging of private property for public purposes without just and adequate compensation being first paid; (*e*) that it is in conflict with the constitutional provision which prohibits excessive fines and cruel and unusual punishments.

2. The proceeding authorized by section 20 of the act in question is one in rem, "against the offending thing, and not against the offending owner."

(*a*) It is not decided that the solicitor of the court having jurisdiction had not legal capacity to institute condemnation proceedings in his

name as solicitor; but it is suggested that the proceeding, in the nature of an information, should properly be brought in the name of the State.

No. 843. FEBRUARY 12, 1919.

Condemnation under liquor law. Before Judge Clayton Jones. City court of Albany. February 13, 1918.

*Peacock & Gardner* and *Pottle & Hofmayer*, for plaintiff in error. *Cruger Westbrook, solicitor*, contra.

GEORGE, J. Robert Mack was arrested by the sheriff of Dougherty county while in the act of transporting twelve quarts of whisky, in a certain Ford automobile, along the public streets of the city of Albany. The automobile was also seized by the sheriff. Mack entered a plea of guilty to the accusation preferred against him in the city court of Albany, which in terms charged that he did "have, possess, and transport whisky, in violation of the prohibition laws of said State," in said county of Dougherty. The sheriff reported the seizure of the automobile to the solicitor of the city court of Albany, who in turn filed a proceeding to condemn the automobile under section 20 of the prohibition law of 1917 (Acts Ex. Sess. 1917, pp. 7, 16). After declaring to be contraband all apparatus or appliances used for the purpose of distilling or manufacturing any of the liquors specified in the act, and providing for the summary destruction of the same when found or discovered by any arresting officer, the section reads as follows: "All vehicles and conveyances of every kind and description which are used on any of the public roads or private ways of this State, and all boats and vessels of every kind and description which are used in any of the waters of this State in conveying any liquors or beverages, the sale or possession of which is prohibited by law, shall be seized by any sheriff or other arresting officer, who shall report the same to the solicitor of the county, city, or superior court having jurisdiction in the county where the seizure was made, whose duty it shall be, within ten days from the time he receives said notice, to institute condemnation proceedings in said court by petition, a copy of which shall be served upon the owner or lessee if known; and if the owner or lessee is unknown, notice of such proceedings shall be published once a week for two weeks in the newspaper in which the sheriff's advertisements are published. If no defense is filed within thirty days from the filing of the petition, judgment by default shall be entered by the court at chambers; otherwise the case shall proceed as other civil cases

in said court. Should it appear upon the trial of the case that said vehicle, conveyance, boat or vessel was so used with the knowledge of the owner or lessee, the same shall be sold by order of the court, after such advertisement as the court may direct. The proceeds arising from said sale shall be applied as follows: (*a*) To the payment of the expenses in said cause, including the expenses incurred in the seizure. (*b*) One third of the remainder to the officer making the seizure and furnishing the proof. (*c*) To the payment of the costs of the court, which shall be the same as now allowed by law in cases of forfeiture of recognizance. (*d*) The remainder, if any, shall be paid into the county treasury, to be held as a separate fund to be paid out under order of the court as insolvent costs in other cases arising from the violation of any of the provisions of this act: Provided, that in any county of this State in which any of the officers of either the county, city, or superior courts are now on a salary, or hereafter placed on a salary, such remainder of the funds applicable to the payment of insolvent costs of such officer or officers shall be retained in the general fund of, and become the property of such county."

Mack did not answer the proceeding to forfeit, but demurred thereto upon grounds hereinafter indicated. The demurrer was overruled, and judgment was rendered condemning the property as provided in section twenty of the act. Mack excepted.

1. "The extent and limits of what is known as the police power have been a fruitful subject of discussion in the appellate courts of nearly every State in the Union. It is universally conceded to include everything essential to the public safety, health, and morals, and to justify the destruction or abatement, by summary proceedings, of whatever may be regarded as a public nuisance." Lawton *v.* Steele, 152 U. S. 133, 136 (14 Sup. Ct. 499, 38 L. ed. 385). A large discretion is necessarily vested in the legislature to determine (*a*) what the interests of the public require, and (*b*) what measures are necessary for the protection of such interests. Barbier *v.* Connolly, 113 U. S. 27 (5 Sup. Ct. 357, 28 L. ed. 923); Kidd *v.* Pearson, 128 U. S. 1 (9 Sup. Ct. 6, 32 L. ed. 346). In Lawton *v.* Steele, supra, it was said: "To justify the State in thus interposing its authority in behalf of the public, it must appear, first, that the interests of the public generally, as distinguished from those of a particular class, require such interference;

and, second, that the means are reasonably necessary for the accomplishment of the purpose, and not unduly oppressive upon individuals." Since the legislature may not arbitrarily interfere with private business, or impose unusual or unnecessary restrictions upon lawful occupations, it follows that "its determination as to what is a proper exercise of its police powers is not final or conclusive, but is subject to the supervision of the courts." Since the decision in the case of Mugler *v.* Kansas, 123 U. S. 623 (8 Sup. Ct. 273, 31 L. ed. 205), it has been recognized by the Supreme Court of the United States that "a State has the right to prohibit or restrict the manufacture of intoxicating liquors within its limits; to prohibit all sale and traffic in them in the State; to inflict penalties for such manufacture and sale; and to provide regulations for the abatement, as a common nuisance, of the property used for such forbidden purposes; and that such legislation does not abridge the liberties or immunities of citizens of the United States, nor deprive any person of property without due process of law, nor contravene the provisions of the fourteenth amendment of the constitution of the United States." Kidd *v.* Pearson, supra; United States *v.* Knight, 156 U. S. 1 (15 Sup. Ct. 249, 39 L. ed. 325).

This court has steadily recognized the right of the State, under the police power, to regulate, restrict, or forbid the manufacture or sale of intoxicating liquors. In the opinion in the case of *Henderson* v. *Heyward,* 109 *Ga.* 373 (34 S. E. 590, 47 L. R. A. 366, 77 Am. St. R. 384), it was said, "It would seem to follow that the State might enact any law which would effectually prohibit the traffic" in intoxicating liquors. In *Delaney* v. *Plunkett,* 146 *Ga.* 547 (3) (91 S. E. 561, L. R. A. 1917D, 926, Ann. Cas. 1917E, 685), this court upheld the right of the State, under its police power, to prohibit the keeping of intoxicating liquors at all in certain places, or in excess of certain quantities at any place, as well as their manufacture and sale within the State. It was there ruled: "The qualities of property theretofore existing in them [intoxicating liquors] were taken away, and it was competent for the legislature to declare that they should be seized, condemned, and destroyed, upon order of the judge of the court having jurisdiction." See, in the same connection, *Barbour* v. *State,* 146 *Ga.* 667 (92 S. E. 70); *Bunger* v. *State,* 146 *Ga.* 672 (92 S. E. 72);

*Howell* v. *Mathieson,* 146 *Ga.* .838 (92 S. E. 520). Under section one of the act approved March 28, 1917 (Acts Ex. Sess. 1917, p. 7), it is provided that "it shall be unlawful for any common carrier, corporation, firm, or individual to transport, ship, or carry, by any means whatsoever, . . from any point without this State to any point within this State, or from place to place within this State," any intoxicating or prohibited liquors. The demurrer in this case does not call in question the validity of section one of the act from which we have quoted. The attack is upon the constitutionality of section twenty of the act. If the State, in the valid exercise of the police power, may declare it unlawful and illegal for any person to transport, ship, or carry whisky by any means whatsoever from any point without this State to any point within this State, and from place to place within this State, it necessarily follows that the State may, in the exercise of its police power, adopt any means reasonably necessary, and not unduly oppressive upon the individual, to prevent the transportation of whisky. Crane *v.* Campbell, 245 U. S. 304 (38 Sup. Ct. 98, 62 L. ed. 304). Such liquors can not reasonably be brought from without to a point within this State, nor carried from point to point within the State, without the use of some vehicle or conveyance of some kind or description. The power to prohibit the transportation of liquors is conceded, at least in this case; and it would seem to follow, as a necessary conclusion, that the forfeiture of the vehicles used in the transportation of such liquors upon the public highways, private ways, and waters of this State is a measure reasonably necessary for the accomplishment of the purpose; and we are unwilling to say that the means adopted, as applied in this case, are unduly oppressive. Inanimate property may, without violence to the due-process clauses of the State or Federal constitution, be forfeited to the State when used as an instrument, and a necessary instrument, in the accomplishment of a purpose declared by the State, within the exercise of its undoubted power, to be unlawful. See Smith *v.* Maryland, 18 How. 71 (15 L. ed. 269), where it was held that the State of Maryland had a right to protect its fisheries in Chesapeake bay by making it unlawful to take or catch oysters with a scoop or drag, and to inflict the penalty of forfeiture upon the vessel employed in this pursuit. It is true that the express purpose of the law considered in Smith *v.*

Maryland was to prevent the destruction of oysters by the use of particular instruments in taking them. We can not think this point has a controlling bearing upon the question presented in the instant case. Under our statute the transportation of whisky into the State, or from point to point within the State, is absolutely prohibited, regardless of the means employed. The legislature, however, recognized the necessity of the employment of some means in the transportation of such liquors, and provided for the condemnation and sale of any vehicle when so used for such purpose upon the public highways, private ways, or waters of this State. In Dobbin's Distillery v. United States, 96 U. S. 395 (24 L. ed. 637), it was held that "where the owner of a distillery and other property connected therewith leased them for the purpose of distilling, the acts or omissions of the lessee in carrying on the business of distilling while he was in possession and with intent to defraud the revenue, although they are unknown to the owner, subject the distillery and such other property to the forfeiture of the United States." The case of Lawton v. Steele, supra, involved the constitutionality of an act of the legislature of the State of New York, which in terms declared it unlawful for any person to take from certain waters within the State "any fish of any kind by any device or means whatever otherwise than by hook and line or rod held in hand." The act further provided that "any net, pound, or other means or device for taking or capturing fish, . . had, found, or maintained in or upon any of the waters of the State," should be summarily destroyed by any person. The Supreme Court of the United States declared that the act was constitutional, and that it did not deprive the citizen of his property without due process of law, in violation of the provisions of the constitution of the United States, although no notice or opportunity to be heard was afforded the owner of the net or device. In the opinion it is pointed out that it is not easy to draw the line between cases "where property illegally used may be destroyed, and where judicial proceedings are necessary for its condemnation." If the article can not be used for any lawful purpose, or if it is of such character "that the law will not recognize it as property entitled as such to the law's protection under any circumstances," it may be summarily destroyed; if the property, although used for an illegal purpose, is nevertheless capable

of being used for lawful and legitimate purposes, notice and an opportunity to be heard would seem to be necessary, at least as a general rule. However, an exception to the general rule was apparently recognized in the case last above referred to, where such property was of trifling value. In the instant case it is said that the automobile is not within itself a nuisance, but, on the contrary, is ordinarily used for lawful and legitimate purposes. This fact is by no means conclusive upon the power of the State to provide for its condemnation and sale when used as an instrument, and a necessary instrument, in the commission of an act which the legislature has declared to be illegal; nor is the value of the property to be affected necessarily controlling upon the question. If so, the State may be denied the right to exercise the power if only the citizen be shrewd enough to employ an article of great intrinsic value in the commission of the act which the legislature has declared to be unlawful. The value of the automobile in this case, however, is not shown; nor does it appear that the car was not regularly used for an illegal purpose. It is not insisted that the statute is violative of the due-process clauses of the State or Federal constitutions because it fails to provide for notice and hearing. Notice and an opportunity to be heard are, by the terms of the statute, afforded. It is, however, urged that the act cuts off all defenses "save only ignorance of the owner that the liquor was being transported," and that the owner should be given the opportunity to show that the property is intrinsically useful and valuable for same lawful purpose. That there are decisions tending to support this view we do not question. Some of them are noted in Lawton *v.* Steele, supra.

The statute does not undertake to declare a forfeiture of the entire estate, both real and personal, of the offender. Only the particular property employed in the accomplishment of the illegal act is declared subject to forfeiture. The proceeding provided is one in rem. The statute, therefore, is not in conflict with article one, section two, paragraph three, of the constitution of Georgia (Civil Code of 1910, § 6384), which provides: "No conviction shall work corruption of blood, or forfeiture of estate." The right of one convicted of crime to inherit, hold, and transmit property is guaranteed; but this guaranty imposes no restriction upon the valid exercise by the State of the police power preserved to it in

the constitution. *Atlantic Coast Line R. Co.* v. *State*, 135 *Ga.* 557 (69 S. E. 725, 32 L. R. A. (N. S.) 20).

"Laws enacted in pursuance of police power to abate nuisances, or to benefit the health of the public, which may result in the destruction of private property, and which do not provide for any payment therefor to the owner, are not violative of the constitutional inhibition against taking private property for a public use without compensation." Williams v. Rivenburg, 145 App. Div. 93 (129 N. Y. Supp. 473, 478). See also Health Dept. v. Rector etc., 145 N. Y. 32 (39 N. E. 833, 45 Am. St. R. 579) ; Mugler v. Kansas, supra. Neither is the act in question violative of article one, section four, paragraph one, of the constitution of this State (Civil Code of 1910, § 6391), which provides that no special law shall be enacted in any case for which provision has been made by an existing general law; nor is it in conflict with article one, section one, paragraph nine (Civil Code of 1910, § 6365), of the constitution of Georgia, which declares that excessive fines shall not be imposed, nor cruel and unusual punishments inflicted. These grounds of demurrer require no discussion, for reasons that are obvious.

2. It is further objected in the demurrer that the present action is one in personam, whereas the proceeding authorized by the statute is "one in rem, solely against the offending thing, and not against the offending owner." As indicated above, we agree to the construction placed by the plaintiff in error upon the act; but we do not agree to his conclusion that the present action is one in personam. It is true that the owner is named in the petition, and process is prayed against him. The judgment prayed is, however, one solely in rem, for the condemnation of the automobile. "A proceeding in rem is in effect a proceeding against the owner as well as a proceeding against the goods; for it is his breach of the law which has to be proven to establish the forfeiture, and it is his property which is sought to be forfeited." 10 Enc. U. S. R. 990; Boyd v. United States, 116 U. S. 616 (6 Sup. Ct. 524, 29 L. ed. 746) ; Place v. Norwich etc. Trans. Co., 118 U. S. 468 (6 Sup. Ct. 1150, 30 L. ed. 134). The judgment rendered in the proceeding was one purely in rem, no costs being taxed against the owner. This fact alone would seem to be a sufficient answer to the contention that the action can not be converted into one in personam

because the owner would thereby be subject to a judgment for costs.

It is also objected that the plaintiff had not legal capacity to sue; that the proceeding should have been in the name of the State against "one Ford automobile." The proceeding was commenced by petition in the name of Mr. Westbrook as solicitor of the city court of Albany. The prayer was for the condemnation of the particular vehicle, as provided by statute. This is a very plain statement of the capacity in which the plaintiff sues, and could not have misled any one of common understanding. This, we think, is sufficient in the case, there being no special demurrer attacking the petition upon the ground indicated, though the point is urged in the brief. We are not called upon, therefore, to decide whether the plaintiff in his name as solicitor of the court had legal capacity to sue (see provisions of the act and section 5510); but we suggest that the proceeding, in the nature of an information, should properly be filed in the name of the State.

*Judgment affirmed. All the Justices concur.*