46380. IRVIN et al. v. WOODLIFF et al.

Argued June 29, 1971—Decided November 24, 1971—
Rehearing denied December 17, 1971—

*Arthur K. Bolton, Attorney General, Harold N. Hill, Jr.,*
*Executive Assistant Attorney General, Alfred L. Evans, Jr.,*

216

*Larry D. Ruskaup, Assistant Attorneys General,* for appellants.

*Hatcher, Stubbs, Land, Hollis & Rothschild, A. J. Land,* for appellees.

PER CURIAM. ■ We have for consideration here first whether or not the State has consented to be sued in this instance. It is well settled that a suit cannot be maintained against the State or any of its agencies without its consent. *Printup v. Cherokee R. Co.,* 45 Ga. 365; *Cannon v. Montgomery,* 184 Ga. 588 (192 SE 206); *Roberts v. Barwick,* 187 Ga. 691 (1 SE2d 713); s. c., 192 Ga. 783 (16 SE2d 867); *Peters v. Boggs,* 217 Ga. 471 (123 SE2d 258); *National Distributing Co. v. Oxford,* 103 Ga. App. 72 (118 SE2d 274); *Crowder v. Dept. of State Parks,* 123 Ga. App. 793 (182 SE2d 512); *Musgrove v. Ga. R. & Bkg. Co.,* 204 Ga. 139, 154 (49 SE2d 26). Counsel for the petitioners contend they obtained this right to sue under Section 11 of the Administrative Procedure Act, as amended (*Code Ann.* § 3A-111; Ga. L. 1964, pp. 338, 346; 1965, pp. 283, 288). But that statute must be construed in conjunction with an earlier section in the same chapter, Section 2 (f) 9, as amended (*Code Ann.* § 3A-102 (f) (9)) wherein the rules and regulations of Departments of the State, which may be tested by declaratory judgment, are defined. Therein it is specifically declared: "The term [rule] . . . does *not* include the following: . . . . (9) Rules relating to loans, grants, and *benefits* by the State or of an agency." (Emphasis supplied). Nor did the Commissioner consider his order (discontinuing the indemnity payments to those feeding garbage to swine) to be such a rule, since copies thereof were not sent to the Secretary of State for compilation in the official compilation of all administrative rules. See Sections 5 and 6 Administrative Procedure Act, as amended (*Code Ann.* §§ 3A-105, 3A-106).

■ By statute the Commissioner of Agriculture is empowered to destroy livestock under certain conditions, such as where herds of swine are infected with cholera, etc. (see *Code Ann.* §§ 62-1718, 62-1719; Ga. L. 1953, pp. 480, 487;

1957, pp. 488, 489), and the Commissioner is authorized (but not required) to make payment to those whose herds are destroyed (*Code Ann.* § 62-1719, supra). If the Commissioner elects to require swine destroyed, and then elects to make payment therefor (which he is not required to do) certainly the making of that payment must be classified as a "benefit"—and the rule therefore is within the exception made by *Code Ann.* § 3A-102 (f) (9), supra, and as to which, no permission to sue the State is given under the provisions of the Administrative Procedure Act, supra.

The petitioners in this case seek to distinguish "benefit" from "indemnity" and urge that payment for swine which have been destroyed is an "indemnity," and not a "benefit." Webster's New International Dictionary, Second Edition, defines indemnity to be "protection or exemption from loss or damage" "compensation or remuneration for loss, damage or injury sustained"; and "a sum paid as compensation." It likewise defines benefit to be whatever promotes welfare or advantage, and pecuniary help in time of need such as sickness, old age, loss of employment or the like. Thus, while every benefit is not an indemnity, necessarily, every indemnity is a benefit. And, an order by the Commissioner of Agriculture as to payment for destroyed herds of swine, under this law, would be a benefit. It is here noted that it has been held by the appellate courts of this State that laws enacted in pursuance of police power to benefit the health of the public, which may result in the destruction of private property, and which do not provide for any payment therefor to the owner, are not violative of the constitutional inhibition against taking private property for a public use without compensation. *Mack v. Westbrook,* 148 Ga. 690, 697 (98 SE 339). The lower court did not have jurisdiction of the defendant or the subject matter.

■ If the Commissioner has authority to issue an order making payment for herds of swine destroyed by cholera (*Code Ann.* § 62-1719, supra), but is allowed by statute (*Code Ann.* § 62-1718, supra), to destroy swine infected with cholera, without making payment therefor, then the order

by his predecessor notifying all owners of garbage-fed swine that hereafter no further payments would be made because of the continued outbreak of cholera, was perfectly legal and one of the rights conferred upon him by the above named statutes. It is noted that the language in the statute is that the Commissioner is *"authorized . . .* to indemnify the owner of live-stock destroyed in eradicating the disease." (Emphasis supplied). He thus is not *required* to make such payments, for indeed, he may not have funds with which to make them. We do not have here the question of equal protection as between garbage-fed swine growers and others.

■ But conceding that the order issued by Commissioner of Agriculture (Campbell) on December 18, 1968, amounted to and should be treated as a rule, and thus is subject to construction in a declaratory judgment action under § 11 of the Administrative Procedure Act, and that payment for destruction of a swine herd is an indemnity and not a benefit, the rule or order of the Commissioner is otherwise valid and binding.

The thrust of the argument that the order or rule is invalid is based on its failure to recite that the Commissioner "had found the feeding of garbage to be a source of such infection," but that it was issued solely on the ground that there had been "continued outbreaks of hog cholera in Georgia," and that in so doing he exceeded his statutory authority.

In the first place, the order or rule recites that there had been "continued outbreaks of cholera" and then proceeds immediately with a termination of indemnity payments for the destruction of infected herds of those "who are feeding garbage," and requires them to make the necessary arrangements for and to bear any costs in the destruction and disposition of the animals. This alone strongly suggests that the Commissioner has made the necessary finding—that the feeding of garbage is a source of infection. *It applies only to those who feed garbage.*

Secondly, it must be presumed that the Commissioner

made the necessary finding, even if it cannot be discerned from the order or rule itself. "Whenever a superior court judge is required by law to make certain findings in order to return a verdict, the presumption is that he has made the required findings, absent a showing to the contrary. *This presumption applies even if the required findings are not specifically set out in the order."* (Emphasis supplied). *Burson v. Collier,* 226 Ga. 427, 428 (175 SE2d 660).

In good conscience, a higher or a greater burden in this respect may not be placed upon the lay administrator of a governmental agency than is placed on the judges of our superior courts, all of whom are trained and experienced in the law, and who are skilled in the preparation of orders, rules and judgments. In *Schaefer v. Clark,* 112 Ga. App. 806 (146 SE2d 318) the question at issue was whether the State Personnel Board could amend an order discharging an employee by making more specific the ground upon which the discharge was based. Holding that it could be done, this court asserted (p. 808): "A ruling to the contrary would have the effect of exacting much higher and much stricter standards in pleadings before administrative bodies than is the case in superior and other trial courts of this State, wherein the right of amendment has been said to be 'as broad as the plan of salvation.' . . . How much greater application this has to the proceedings in an administrative agency, operated by laymen, than to courts where the practioners are skilled in the law and the niceties of its requirements!"

The presumption afforded the superior court judge rests upon the broad presumption that all public officials perform their duties in the manner and to the extent required by law. "The general rule is, that when an officer is required to do an act, the omission to do which would make him guilty of a culpable neglect of duty, it ought to be intended that he has duly performed it, unless the contrary is made to appear." *Vaughn v. Biggers,* 6 Ga. 188 (7). "[T]he court will presume in favor of public officers in the absence of all proof to the contrary, that they discharged their duty in

compliance with the law." *Truluck v. Peeples,* 1 Ga. 1.

The presumption has been applied to judges, clerks, sheriffs, constables, tax assessors, members of a city council, and others. Shall we hold it applicable to these but not to the Commissioner of Agriculture? Shall we apply a standard to the judges, requiring less of them, and another higher, stricter standard to the Commissioner?

Not only is it to be presumed that the Commissioner followed a proper procedure in the making of findings, but that the findings were supported by evidence which he was authorized to consider in the administrative procedure. *Stuckey v. Watkins,* 112 Ga. 268 (2) (37 SE 401, 81 ASR 47); *Bryant v. Fidelity & Cas. Co.,* 114 Ga. App. 853 (2) (152 SE2d 759). Nothing in this record rebuts the presumption.

*Judgment reversed. Pannell and Evans, JJ., concur. Bell, C. J., Hall, P. J., Eberhardt and Deen JJ., concur in the judgment and in Headnote 4 and Division 4. Jordan, P. J. and Quillian, J., dissent. Whitman, J., not participating.*

JORDAN, Presiding Judge, dissenting. 1. We proceed on the premise, requiring no citation, that an action against a State officer in his official capacity, and the agency which he heads, is tantamount to an action against the State, for application of the immunity doctrine, unless the State has consented to the action.

If the notice is a rule within the definition of the Administrative Procedure Act the validity may be determined by declaratory judgment, where it is alleged that the rule or its threatened application interferes with the legal rights of the petitioner. § 11, Ga. L. 1964, pp. 338, 346; 1965, pp. 283, 288 (*Code Ann.* § 3A-111). Under this statute a rule includes a statement of general applicability that implements law, subject to listed exceptions including rules relating to loans, grants, and benefits by the State as an agency. See § 2 (f) and (f) 9 of the Act, (*Code Ann.* § 3A-102 (f) and (f) (9). In our opinion the effect of the Act cannot be avoided merely because a rule within the definition of the statute was not promulgated in accordance with other re-

quirements of the statute. We note with interest that the Commissioner has promulgated and revised rules for indemnity payments (but not the notice here under consideration) under the Administrative Procedure Act, citing the 1953 law, supra, as amended, as authority. See 1971 Hog Cholera Eradication Requirements, Amended, Indemnity, 40-13-8-.03(5), Vol. 1, pp. 668, 669, Official Compilation, Rules and Regulations of the State of Georgia, which became effective April 20, 1970, superseding the former rules, 40-13-8-.03(6), as published on pp. 525 et seq. The revision eliminates indemnity "in any outbreak of hog cholera where garbage has been fed." The notice here involved obviously implemented "Georgia Laws (House Bill No. 598, 1953)", i.e., Ga. L. 1953, p. 480; Code Ann. Ch. 62-17, which authorizes eradication programs (§ 21, Code Ann. § 62-1718) and the payment of indemnity (§ 22; Code Ann. § 62-1719) for the destruction of livestock to eradicate infectious and contagious diseases.

But is a rule in implementation of law relating to the payment of indemnity also a rule relating to loans, grants, and benefits by the State or an agency? The payment of indemnity in ordinary signification conveys the idea of restitution, reimbursement or compensation for loss, damage, or injury. See Travelers Ins. Co. v. Ga. Power Co., 51 Ga. App. 579, 583 (181 SE 111). A loan, grant or benefit, in ordinary signification, does not convey the idea of payment to compensate for loss, damage, or injury. Compensating one for loss or damage to his property is reimbursement.

In our opinion the action here involved is one which states a claim for which relief may be granted, to which the State has consented under § 11 of the Administrative Procedure Act.

■ Under the statute which the rule here involved implements, "the Commissioner of Agriculture may, if in any case he finds the feeding of garbage to be a source of such infection, make indemnity payments inapplicable to garbage feeders." § 22, Ga. L. 1953, pp. 480, 487 (Code Ann. § 62-1719). It is unnecessary to determine whether this

means that in any case where he finds the feeding of garbage by a particular feeder is a source of infection he may make the payment of indemnity inapplicable to that feeder, or whether the authority is broader, for in any event he is required to make a determination that the feeding of garbage is a source of infection. The former rules as promulgated in the Official Compilation, cited supra, clearly create the implication that each case will be treated individually, with any payment contingent upon the availability of funds. The notice involved in the present appeal, however, makes it clear that all indemnity payments to garbage feeders were discontinued, effective December 18, 1968, not because of any finding that garbage feeding is a source of cholera infection, but merely because of continued outbreaks of the disease in Georgia. This blanket suspension for the reason stated clearly exceeds the authority conferred by the statute; and is, in effect, an abdication of responsibility under the statute.

I am authorized to state that Judge Quillian concurs in this dissent.