SHELTON OLIVER and RICHARD W. WOOTTEN, executors, &c., plaintiffs in error, *vs.* L. C. COLEMAN *et. al.*, defendants in error.

Under the Ordinance of the Convention, juries should be allowed a liberal discretion in adjusting the equities of the parties by their verdict; but it is the duty of the Courts to see to it that such discretion is not *abused* and made the instrument of *injustice*, by granting a new trial when the verdict is strongly and decidedly against the evidence, and the principles of equity as manifested thereby.

Motion for new trial. (Scaling Ordinance.) Decided by Judge WILLIAM M. REESE. Lincoln Superior Court. October Term, 1867.

On the third day of December, 1862, L. C. Coleman, Anthony Harmon and E. J. Lyon made two single bills or bonds, payable to " Shelton Oliver and Richard W. Wootten, *executors* of Richard R. Wimpey, deceased, or bearer," one

for $158, and the other for $290, and due twelve months after date.  The payees sued the makers thereon, and the defence was that the notes were within the Scaling Ordinance of 1865, and that plaintiffs ought not to recover more than the value of so much Confederate currency at the maturity of the notes.

At the trial, the plaintiff read in evidence the bonds and closed.

The evidence for defendants was as follows :

E. J. LYON, one of the defendants, sworn, said :  the largest note was for cattle, the other was for a horse bought at the sale of the perishable property of the deceased by the executors (plaintiffs), at public outcry, on deceased's plantation in Lincoln County, Georgia, at the date of the notes. The terms of the sale were, cash for all sums under twenty dollars, for larger sums, notes with good security due twelve months after date, with interest from date if not punctually paid.

Nothing was said at the time about the currency in which the notes were to be paid.  [The common currency of the country at that time was Confederate money.  Contracts were then commonly understood to be in Confederate money when no other money was specified.]

The cattle and horses were bought for the prices then customary in Confederate money.

There were fifteen or twenty cattle.  The prices were three or four times the prices of such property in specie before the war.  Nothing passed with the executors about the sort of money in which the notes were payable.   I gave the money to Mr. Sale to pay the notes for me.

PEYTON W. SALE testified :  that Lyon gave him the amonnt of the notes in Confederate money to pay the plaintiffs, shortly before the notes were due ; he went to Oliver's to pay it in time, he thought it was a few days before the notes were due ; Oliver was not at home.   Soon after the maturity of the notes, Sale saw Wootten and offered him the money, he declined it, saying they could not receive it because the legatees would not ; witness was at the sale and the

property sold for prices then usual in Confederate currency.

Z. S. WILLINGHAM testified : that at the close of the sale it was announced, that a discount of five per cent. would be allowed to purchasers who would pay in cash, but that " beehive money " would not be taken.

It was agreed by counsel that specie was three for one in Confederate money at the date of the sale, and twenty for one at the maturity of the notes, and at the trial was at a premium of forty per cent. in greenbacks.

That portion of the foregoing testimony of Lyon, in brackets, was objected to as illegal and irrelevant, and the objection was overruled.

The verdict was for $40.76 and costs, for plaintiffs. They moved for a new trial upon the grounds that the Court erred in allowing said evidence of Lyon in brackets to go to the jury, and because the verdict was against law and decidedly and strongly against the weight of evidence.

The new trial was refused, and of this refusal complaint is made here.

A. T. AKERMAN, for plaintiffs in error.

TOOMBS & DuBOSE, for defendants in error.

WARNER, C. J.

The error assigned to the judgment of the Court below in this case, is in refusing to grant a new trial on the grounds specified in the motion therefor.

There was no error in admitting the testimony of Lyon as to " Confederate money being the common currency of the country at the date of the notes, and that contracts were commonly understood to be in Confederate money when no other money was specified." This evidence was admissible under the Ordinance of the Convention, for the purpose of showing the *intention* of the parties as to the *particular currency* in in which the payment of the notes was to be made.

The notes were given for cattle and a horse purchased at an executors' sale. The evidence in the record is, that the

Oliver and Wootten *vs.* Coleman *et al.*

property sold for *three or four* times the price of such property in specie before the war. The principal of the two notes is $448. If the property sold for four times its value in specie, for Confederate money, it was worth $112 in specie to the purchaser—that is to say, the cattle and horse which were the *consideration* of the two notes, were worth at least $112 at a specie valuation ; that is *the value of the consideration* for which the notes were given, in *good money.* Why should not the defendants be required to pay the *intrinsic* value of the property in *good money* at the time of the sale, with the lawful interest on that amount from the time the notes therefor became due ? Such a verdict would seem to have been according to the principles of equity between the parties in this case ; but the jury found a verdict for the plaintiffs for only the sum of *forty dollars* and *seventy-six cents.* The defendants have got the plaintiffs' property, worth at least $112 *in specie* at the time they purchased it, and now by the verdict they pay only $40.76 for it. If such a verdict is in accordance with the principles of equity, we are unable to perceive it.

Whilst the Courts should allow the juries a *liberal discretion* under the provisions of the Ordinance, in adjusting the equities of the parties by their verdict, still it is their duty to see to it that such discretion is not *abused* and made the instrument of *injustice.* The "principles of equity" on which the verdict and judgment are required to be rendered in such cases, do not confer upon the jury an *unlimited arbitrary* discretion; but the verdict and judgment shall be rendered on principles of equity as *regulated by law.* The verdict in this case, upon the facts disclosed by the record, is not, in our judgment, in accordance with the principles of equity or the evidence in the case, but strongly and decidedly against both.

Let the judgment of the Court below be reversed, and a new trial granted.