ISAAC G. MITCHELL, plaintiff in error, *vs.* REBECCA B. BUTT *et al.*, defendants in error.

Where a note was given in November, 1862, for Confederate money borrowed, payable two years after date, and the jury, in adjusting the equities between the parties according to the ordinance of 1865, gave a verdict rating the value of Confederate money neither at the date of the note nor at its maturity, but at a date intermediate between the making and the maturity of the same :

*Held*, that while the verdict does not fully conform to our views of the rights of the plaintiff, yet under the rule that in such cases the jury have a wide discretion, this court will not disturb it.

New trial. Scaling ordinance. Before Judge HOPKINS. Fulton Superior Court. April Term, 1873.

Isaac G. Mitchell filed a bill against Rebecca B. Butt and Jesse M. Butt, charging that some time previous to the 14th of November, 1862, the defendants had purchased of Benjamin Rogers the south half of land lot number one hundred and thirty-two, containing one hundred and one and one-fourth acres, in the fourteenth district of Fulton county ; that the defendants had not paid and could not pay one dollar of the purchase money ; and that on the 14th November, 1862, they applied to complainant to make payment for them, and said that the land should stand bound to complainant until the purchase money was paid ; that complainant did make payment on that day to said Rogers of the entire amount of said purchase money, to-wit : $900 00, and thereupon Rogers made and executed to defendants a fee simple title to said land, and the defendants made and executed to complainant the following instrument in writing :

"ATLANTA, GA., November 14th, 1862.

"Two years after date, with interest from date, we promise to pay I. G. Mitchell the sum of nine hundred dollars ($900 00) for the south half of land lot No. 132, containing 101¼ acres, more or less, lying and being in the 14th district of originally Fayette, now Fulton county.

"Witness our hands and seals,

"REBECCA B. BUTT, [L. S.]
"JESSE M. BUTT,    [L. S.]"

Mitchell *vs.* Butt *et al.*

That said note was intended to cover the agreement that said land should stand bound for the purchase money, which was all paid by complainant, and none by defendants; that defendants had recently offered to sell said land in order to defeat said agreement, and that they were insolvent.

The bill prays for an injunction to restrain defendants from selling the land, and that a decree might be rendered fixing a lien upon the land for the purchase money, and for the sale of the land to discharge complainant's debt, and for subpœna, etc.

At chambers, December 24th, 1869, Honorable J. D. Pope, judge of the superior court, granted the injunction prayed for in the penalty of $1,000 00.

The defendants answered that said Jesse M. Butt, in behalf of his wife, Rebecca B. Butt, did, on the 14th of· November, 1862, borrow $900 00 of complainant, and pay the same to said Rogers, and that the said Rogers, in consideration thereof made and executed to the said Rebecca B. Butt, on said day, a warranty deed, conveying said land to said Rebecca B. Butt in fee simple, and appended a copy of the deed to the answer as an exhibit; that thereafter, on the same day, the defendants made and executed the written obligation set out in complainant's bill, and that the sum of $900 00 was the entire amount paid to the said Rogers as the purchase money of said land; that the written obligation contains the agreement made between complainant and defendants; that at the time of the execution of said written obligation the said Jesse M. Butt had no title to said land, and therefore could not bind the same; that he received no consideration for the said obligation; that the said Rebecca B. was, at that time, and still is, married to said Jesse M. Butt, who was still living, and that therefore the said written obligation was void, etc.

On the trial the complainant introduced the written obligation of said Rebecca B. and Jesse M. Butt, hereinbefore copied. He then read the depositions of Benjamin P. Rogers, as follows:

"I was the owner of south half of lot of land number one hundred and thirty-two, in originally fourteenth district of

Mitchell *vs.* Butt *et al.*

Fayette now Fulton county. On the 14th day of November, 1862, I made a verbal contract with Jesse M. Butt, Jr., several days before the deed was made. He said he would buy the place, and expected to get the money from Isaac Mitchell. We, (witness, Jesse M. Butt, Jr., and I. G. Mitchell,) came into W. M. Butt's office, and the deed was made. Isaac G. Mitchell paid me the purchase money. My recollection is that I made the deed to Jesse M. Butt, Jr., and his wife. I never received any compensation from Jesse M. Butt, Jr. The note hereto attached is the one given to Isaac G. Mitchell. I bought the lot of land by the number one hundred and thirty-two, and sold it by that number; I am not certain that its real number was one hundred and thirty-two. I did not know any person in the transaction but Jesse M. Butt; I don't know whether he was acting for himself or wife; Jesse M. and Rebecca B. Butt were living together as man and wife, and generally recognized as such in the community in which they lived at the time these papers were executed. I don't remember whether Rebecca B. Butt was present or not when the money was paid to me, but the money was paid by Isaac G. Mitchell at the same time that the deed was made; I was actually present when the papers were made. My impression was that Mitchell loaned Butt the money to pay for the land, and that the land was to stand bound for it. I don't recollect whether Mrs. Butt was present at any of these conversations about the land. That lot of land was improved when I sold it; about twenty acres was cleared, and there was a dwelling house, gin house, cotton screw, stable, crib, etc.

"I mean, when I say Mr. Mitchell loaned the money, that he furnished the money that paid for the land, and paid it to me. It was Confederate money. Butt never handled the money at all after I got it, and I don't know that he ever did before."

Complainant introduced his own depositions, as follows: "Mr. Butt lived in a little house on an adjoining lot of land, and wanted to move on the Campbellton road, to a well im-

proved place, to-wit: the one already described by witness Rogers. I agreed to pay Mr. Rogers the money if Butt would execute a mortgage lien upon the land to me, and we carried out what we considered to be a mortgage lien upon the land. I never loaned Butt the money and never placed the money in his hands, but when we came to make the papers I allowed the deed to be made to Jesse M. Butt, Jr., trustee for his wife, taking from the two the annexed note or paper, which we considered a mortgage lien. The land was to be Rebecca Butt's, provided they paid me the $900 00 specified in the note. I do not remember whether Mrs. Butt was present when I had the understanding with her husband about the giving the mortgage lien or not. There was no other mortgage executed between me and Jesse Butt, his wife, or either of them. Before the war the land was worth $900 00, and now it is worth about $600 00. I understood that Jesse M. Butt, Jr., in the transactions in regard to this land, was acting for himself and wife. His wife never paid me a dollar."

By agreement of parties, a copy of the "Atlanta Constitution" was introduced in evidence, showing the value of gold in currency, at the date of the trial, to be one hundred and seventeen per cent., and also Barber's table showing the value of Confederate money at the date of the contract to be three for one, and subsequent value. The complainant closed. The defendants introduced no evidence. After argument, the court charged the jury as follows:

"If you should believe from the evidence in this case that the defendants purchased from Benjamin Rogers the tract of land described in complainant's bill, at the time therein specified, and that complainant advanced the purchase money for the defendants, and the defendants agreed that said land should stand bound to complainant for the money, and defendants executed and delivered to complainant the instrument described in complainant's bill, and said Rogers executed and delivered to defendants, or either of them, a deed to said land, it would be your duty to find, for the complainant; if

Mitchell *vs.* Butt *et al.*

you believe otherwise, find for the defendants.    If you find for the complainant, look to the value of the consideration of the note or instrument described in the bill, at any time, in order to ascertain the amount, and look also to the testimony and see what the intention of the parties was as to the particular currency in which the debt should be paid, and the value of such currency at any time, and render a verdict on principles of equity.    It is not meant by this that you can change the contract, but the door is thrown widely open that you may see what was the true contract and administer it in its purity."

The jury found for the plaintiff $120 00, and that the amount should be a lien upon the land as the purchase money.

The complainant moved for a new trial, on three grounds :

1st. Because the verdict of the jury was contrary to evidence, and manifestly and decidedly against the weight of the evidence, and contrary to the principles of equity.

2d. Because the verdict of the jury was contrary to law.

3d. Because the verdict of the jury was contrary to the charge of the court.

The motion was overruled, and complainant excepted.

D. F. & W. R. HAMMOND, for plaintiff in error.

J. M. CALHOUN & SON, for defendants.

McCAY, Judge.

We would have been better satisfied with the verdict in this case had the jury given the plaintiff a larger verdict; but, under the rule laid down by this court very shortly after the passage of the ordinance of 1865, the jury have a large discretion in these cases.    This was, in fact, a loan of Confederate money; the plaintiff parted with no property.    Under the circumstances, we held when this case was before us at a previous term, that he had a lien on the land for his advance; or rather, that the defendants were estopped by their deed from saying to the contrary.    But when we investigate,

as the ordinance of 1865 provides, the real truth of the case, in order to get at the true amount of lien, the question is at last what was the consideration passing from the plaintiff to the defendants? It appears that the consideration was the advance of Confederate money. What its value was at the time, or afterwards, or at the maturity of the debt, was a question for the jury under the ordinance and under the rule we have alluded to, and the judge refusing, as he has, to interfere, we (though, as we have said, are not satisfied,) will not do so either.

Judgment affirmed.