CONYERS, administrator, *v.* COMMISSIONERS OF ROADS AND REVENUES OF BARTOW COUNTY.

1. A suit was brought against the inferior court of a given county in 1868. In 1874 a board of commissioners of roads and revenues was established for the county. In 1876 an order was passed which, properly construed, made the board of commissioners in its corporate capacity a party defendant to the case. A judgment was recovered by the plaintiff in 1901, for a sum less than that sued for. A motion for a new trial filed by the plaintiff having been overruled, the case was brought to this court; and a motion was made to dismiss the writ of error, upon the ground that there was no defendant in error named in the bill of exceptions, the board of commissioners of the county therein named not being such a corporation as was authorized, since the adoption of the constitution of 1877, to defend suits in behalf of the county. *Held:* (1) That the provision of the constitution of 1877, that all suits by or against counties shall be in the name thereof, did not affect suits pending at the time of the adoption of the constitution. (2) That an amendment changing the name of the defendant from the board of county commissioners to that of the county would have been regular and proper. (3) That the failure, however, to make such an amendment would not cause the writ of error to be dismissed, when it appears that the case brought to this court in the bill of exceptions is, as to the names of the parties, identical in all respects with the case tried in the court below.
2. This being a suit to which the scaling ordinance of 1865 was applicable, and it being palpably apparent that the verdict rendered was not in accordance with the principles of justice and equity, the court erred in not granting a new trial at the instance of the plaintiff.

Argued June 24, — Decided August 7, 1902.

Action on bond. Before Judge Gober. Bartow superior court. December 2, 1901.

*J. B. Conyers* and *B. J. Conyers,* for plaintiff.
*Albert S. Johnson,* for defendants.

COBB, J. Joel T. Conyers, as administrator de bonis non with the will annexed of Bennett H. Conyers, obtained a verdict against the commissioners of roads and revenues of Bartow county; but as the amount of the verdict was less than the plaintiff thought he was entitled to recover, he made a motion for a new trial, and this motion being overruled, he excepted.

1. A motion was made to dismiss the writ of error, upon the ground that there was no such corporation, copartnership, or natural person as the commissioners of roads and revenues of Bartow county, the defendant in error named in the bill of exceptions. In

order to determine this motion it is necessary to give a brief history of this suit. On February 19, 1868, Christopher B. Conyers, as executor of the will of Bennett H. Conyers, brought suit in the superior court of Bartow county against the "inferior court of said county." On January 29, 1876, the following order was passed in the case: "It appearing to the court that Russel H. Cannon, David V. Stokley, R. Hayne Dodd, John C. Aycock, and John H. Wikle have each been served with scire facias requiring them as county commissioners to show cause why they should not be made party defendants in said case to represent the county in said case, and no sufficient cause having been shown, it is ordered that said commissioners be made parties, and the question as to the costs of this proceeding remain open for further decision." On January 29, 1895, Joel T. Conyers, as administrator with the will annexed of Bennett H. Conyers, was made a party plaintiff in the case. The case has proceeded from the time it was instituted in the name either of the executor or of an administrator with the will annexed. From the date the suit was filed until January 29, 1876, the case proceeded against the inferior court of Bartow county, and from the date just mentioned to the present time it has proceeded against the commissioners of roads and revenues of Bartow county. It is now contended that the order above quoted did not have the effect of making the commissioners in their corporate capacity parties to the suit, and that, if it did have this effect, there has been, since the adoption of the constitution of 1877, no party defendant in the case; and that for these reasons the writ of error should be dismissed. The proper way to sue the county at the date this suit was instituted was to proceed against the inferior court of the county. Irwin's Code of 1867, § 526. The inferior courts were abolished by the constitution of 1868. Code 1873, § 5126. In 1872 the General Assembly passed an act which was entitled an act to define the method of perfecting service in suits in this State where a county may be or is a party; and it was provided that, in all suits which had been or which might thereafter be commenced in the .courts of this State in which a county was or might be a party, service should be made upon the ordinary and clerk of the court of ordinary, if there was a clerk, and if no clerk, then upon the ordinary alone; except that in those counties where the fiscal affairs of the county were committed to a board of commissioners, service

perfected upon a majority of the commissioners should be sufficient to all intents and purposes. Acts 1872, p. 39. There is nothing in this act which declares in terms who shall be named as the defendant in an action against a county.

The business of a county which was formerly conducted by the inferior court was, after the adoption of the constitution of 1868, confided to the ordinary in all of those counties where the General Assembly had not seen fit to create boards of commissioners of roads and revenues. In those counties where such boards were created, they were given jurisdiction over county matters. As under the old law suits against a county were in terms required to be brought against the inferior court, and as the ordinary or the board of county commissioners, as the case might be, took the place of the inferior court, it would be natural to presume that thereafter the proper way to sue a county would be to sue either the ordinary or the board of county commissioners, as the case might be, in their official capacity. The codifiers of the Code of 1873 were evidently of this opinion; for there is contained in that code a provision in terms that suits must be brought against the ordinary. Code of 1873, § 492. Although there may be no ruling on the subject, it is certainly true that the uniform practice followed prior to the adoption of the constitution of 1877, in suits against counties, was to make the person or persons charged with the duty of attending to the affairs of the county the defendant or defendants to the suits. From the time that the inferior court was abolished in 1868 until March 2, 1874, the ordinary of Bartow county had charge of the affairs of the county. On the date just named an act was approved providing for the appointment of a board of commissioners of roads and revenues for that county; and it was provided in the act that this board should be a body corporate, with power to sue and be sued, plead and be impleaded, in all matters falling within its jurisdiction as therein defined, and liable only in all such suits in its corporate capacity as the representative of the county. Acts 1874, p. 332, § 12. Of course, all suits brought against the County of Bartow after the date of the passage of the act just referred to, and before the adoption of the constitution of 1877, would be properly brought against the board of commissioners in its corporate capacity. This being true, we know of no reason why the board of county commissioners as the representative of the county should not be

made a party to a case which had been brought against the inferior court as the representative of the county. It is said though that the order above quoted, when properly construed, did not make the board in its corporate capacity a party defendant, but merely made the individuals named in the order parties to the case. We do not think this a correct construction to be placed upon the order. The language of the order is, in our judgment, sufficiently clear to indicate that the purpose of the court in passing the order was to make the board of county commissioners in its official capacity a party to the case.

It will thus be seen that at the time of the adoption of the constitution of 1877 the plaintiff had pending against the County of Bartow a suit which in all respects complied with the law in regard to suits against counties prior to the adoption of that instrument. That constitution provided that " all suits by or against a county shall be brought in the name thereof." Civil Code, § 5924. It has been held that this provision was self-executing and needed no legislation to carry it into effect, and that a suit brought since the adoption of that constitution against the county commissioners of a given county was not properly brought, and no amendment could be made substituting the name of the county as a defendant. *Jackson* v. *Dougherty*, 99 *Ga.* 185, and cases cited; *Glaze* v. *Bogle*, 105 *Ga.* 295, 298, and cases cited. It has never been held that the effect of this provision in the constitution was to cause to abate a pending suit which had been properly brought before the adoption of the constitution, and it would be necessary to hold this in order to support the contention of the defendant in error. The suit was properly brought against the inferior court. The board of county commissioners was properly made a party defendant in 1876, to take the place of the inferior court. The *county* was sued in 1868 and sued in the name in which the law required it to be sued. By the order of 1876 the suit was amended so as to make it proceed in the name in which counties were then authorized to be sued. It would certainly have been better if an amendment had been offered, after the adoption of the constitution, changing the name of the defendant to conform to the rule there laid down. But as the county had been properly sued in an authorized name and a suit was pending against it in that name, we know of no reason why the plaintiff may not proceed against the county in that

name, certainly until some one in behalf of the county raises the objection that the name of the defendant should be changed to that which would be in accord with the rule and practice growing out of the provision of the constitution of 1877.　If the County of Bartow sees proper to litigate with this plaintiff, as it has a right to do, in the name in which suit might have been properly brought and suffers a judgment to go against it in that name, it can not raise the objection that the judgment is void on account of the failure of the plaintiff to make a formal amendment changing the name of the defendant to comply with the rule laid down in the constitution, which was never intended to apply to or affect pending suits.　The plaintiff had a right to make this change, if he had seen proper, just as was done in 1876, when a change was made so as to make the name in which the county was sued correspond with the existing practice at that time; but we do not think it was incumbent upon the plaintiff, in order to maintain this suit after the adoption of the constitution of 1877, to amend the suit so as to make it proceed against the county in its name. Especially was it not incumbent upon him as long as the county saw proper to litigate under a name in which it could have been sued at the time the suit was instituted, or at the time the amendment of 1876 was made.　The county has seen proper to litigate with this plaintiff, continuously from the time the constitution of 1877 was adopted until the present, under the name in which it found the suit pending at that date, and we do not think it can raise the question in this court at this late day by moving to dismiss the writ of error.

2. This was a suit on a bond issued by the County of Bartow on October 27, 1863, and the principal sum named in the bond was $9,765.　The bond was payable on January 1, 1864, and bore interest at the rate of seven per cent. per annum from date.　This controversy has been pending in the courts of this State for nearly forty years, and the case has several times been before this court. See *Pritchett* v. *Inferior Court*, 46 *Ga.* 462; *Pritchett* v. *Commissioners*, 93 *Ga.* 736; *Same* v. *Same*, 94 *Ga.* 731; *Commissioners* v. *Conyers*, 102 *Ga.* 588; *Same* v. *Same*, 108 *Ga.* 559.　When the case was last before this court, in the 108 *Ga.*, it was held that the liability of the county on the bond sued on had been settled by the former decisions of this court, that the bond was a valid and binding contract, that the only question open in the case was what

was the amount of liability on the part of the county, and that in determining this question the jury were to be controlled by the provisions of the scaling ordinance of 1865, which provided that all contracts made between the 1st day of June, 1861, and the first day of June, 1865, should receive an equitable construction, and verdicts and judgments thereon should be based on the principles of equity. This court has held that in the trial of cases to which the ordinance referred to is applicable the jury has a large discretion in the adjustment of the equities between the parties under the contracts, and where the verdict rendered does substantial justice between the parties, this court will not reverse a judgment of the trial judge in refusing to grant a new trial, where no error of law has been committed.    See *Lloyd* v. *Cheney*, 37 *Ga.* 497; *Green* v. *Jones*, 38 *Ga.* 347; *Cutcher* v. *Jones*, 41 *Ga.* 675; *Kile* v. *Johnson*, 48 *Ga.* 189; *Williams* v. *Phipps*, 49 *Ga.* 175; *Mitchell* v. *Butt*, 51 *Ga.* 274. On the other hand, it has been held that in such cases where the verdict is contrary to the evidence and is grossly unjust, this court will reverse a judgment refusing to grant a new trial.    *Slaughter* v. *Culpepper*, 35 *Ga.* 25; *Field* v. *Leak*, 36 *Ga.* 362.    In *Oliver* v. *Coleman*, 36 *Ga.* 552, it was held that, under the scaling ordinance, juries should be allowed a liberal discretion in adjusting the equities of the parties by their verdicts; "but it is the duty of the courts to see to it that such discretion is not *abused* and made the instrument of *injustice*," by granting a new trial whenever it is manifest that the verdict is contrary to the evidence and the principles of equity.    It appears from the present record that the judge charged the jury, in effect, that there was nothing for them to determine except the amount the county should pay to the plaintiff, and that in arriving at this amount they should be governed by the provisions of the scaling ordinance of 1865, which he read to them.    While there are assignments of error in the motion for a new trial on the charge of the judge, we do not think any of them are well taken. The question, therefore, to be determined is whether the verdict rendered by the jury is supported by the evidence and in accordance with the principle of justice and equity.

The verdict was for $150, with interest from October 27, 1863, at seven per cent. per annum.    There was uncontradicted evidence that the consideration of the bond was 3,265 bushels of corn sold to the county by the plaintiff's testator; and the agreement between

him and the officer of the county with whom the contract was made was that the county could take the corn and fix its own price per bushel, so that the amount to be paid was not less than fifty cents per bushel in good money. The amount of the bond would indicate that the county had agreed to pay for the corn at the rate of $3 per bushel in Confederate money, as the bond was payable in that money. This would seem to indicate that at the time the bond was made three dollars in Confederate money was worth at least fifty cents in gold. There was much evidence as to the value of Confederate money, there being some evidence that at the date the bond was executed one dollar in Confederate money was worth only two or three cents in gold. There was also much evidence as to the value of corn, and, according to the testimony of two witnesses, at one time corn was worth in Bartow county as little as fifteen cents per bushel. It is to be said, however, in justice to these witnesses that one of them said this was when the Indians were here, and the other simply said that he could remember when corn was worth only that amount, but that since railroads had been built a bushel of corn would be worth an ordinary day's work of unskilled labor. There was also evidence that between the date of the execution of the bond and the maturity of the same Confederate money was worth much more than two or three cents on the dollar in gold, and that corn was worth far more than fifteen cents per bushel. If the verdict of the jury had been based on the value of Confederate money, they could not have found, even at the lowest proved value of that money, a verdict for less than $195.30. If the jury had taken as a basis for their finding the lowest proved value of corn, their verdict would have been for $489.75. We do not say it would have been equitable and just to do this; but it is most probably true that there never was a time in the history of Bartow county or any other county of this State that corn was worth less than five cents per bushel, and the verdict of the jury in this case would indicate that they were of opinion that, some time between the date and the maturity of the contract sued on, corn was worth between four and five cents per bushel. The purpose of the ordinance of 1865 was to authorize the juries in the trial of cases to which it was applicable to adjust the equities between the parties and to do justice. It was never intended that that ordinance should be used as an instrument of oppression and

injustice.    Even  giving to the  jury the  broad  range which they have  under  the  ordinance  of  1865, the  verdict  rendered  in the present  case  was  wholly unwarranted.    Using  the  language  of Judge Walker  in  *Field*  v.  *Leak*, supra, " Can  any  one  seriously con- tend that this is a verdict rendered on principles of equity and jus- tice ?"    Let  this case be tried  again, and a verdict  for an amount which  is founded  on the  principles  of  justice and equity be ren- dered in favor of the plaintiff, and  this long-standing  controversy be terminated. ·

*Judgment reversed.    All  the  Justices concurring, except Lewis, J., absent.*