ROBERTS, commissioner, *et al. v.* BARWICK *et al.; et vice versa.*

Nos. 12633, 12636. FEBRUARY 16, 1939. REHEARING DENIED MARCH 10, 1939.

*M. J. Yeomans, attorney-general,* and *Ellis G. Arnall,* for plaintiff in error.

*J. Ira Harrelson* and *McElreath, Scott, Duckworth & Duvall,* contra.

DUCKWORTH, Justice. The pleadings and record in this case present three questions for determination; (1) Can the State be sued in any event without its consent? (2) Is the present suit against Roberts as Commissioner of Agriculture a suit against the State? (3) Are the activities of the Commissioner of Agriculture here involved State functions; and, if not, does the State by engaging therein lose its immunity to suit without its consent?

■ In the year 1860 this court, in *Georgia Military Institute* v. *Simpson,* 31 *Ga.* 273, 277, said: "The appeal, therefore, for compensation must be to the public authority, and not to the courts.

We have no court of claims in this State, nor petition of right, as in England. But whoever contracts with the State trusts to the good faith of the State, unless the State sees fit to disrobe itself of its sovereignty." Since that time this court has consistently followed the rule announced in that case. *Printup* v. *Cherokee Railroad Co.*, 45 *Ga.* 365; *Brunswick & Albany Railroad Co.* v. *State*, 48 *Ga.* 415; *Peeples* v. *Byrd*, 98 *Ga.* 688 (25 S. E. 677); *Stewart* v. *Atlanta Beef Co.*, 93 *Ga.* 12 (18 S. E. 981, 44 Am. St. R. 119); *Western Union Telegraph Co.* v. *Western & Atlantic Railroad Co.*, 142 *Ga.* 532 (83 S. E. 135); *Cannon* v. *Montgomery*, 184 *Ga.* 588 (192 S. E. 206). And the Supreme Court of the United States has also recognized this rule. North Carolina *v.* Temple, 134 U. S. 22 (10 Sup. Ct. 509, 33 L. ed. 849); Louisiana *v.* Steele, 134 U. S. 230 (10 Sup. Ct. 511, 33 L. ed. 891); Smith *v.* Reeves, 178 U. S. 436 (20 Sup. Ct. 919, 44 L. ed. 1140). This has been so often laid down and acknowledged by the courts of this State, of other States, and of the United States, that it is hardly necessary to again formally assert this rule. The sovereignty of the State is supreme, and to maintain that sovereignty the supremacy must also be maintained, and to do that the State must never be subjected to suit without its expressed consent. It should be noted that what we say here, which is in harmony with what this court and other courts have consistently held, is that the State can not by the courts be required to submit to being sued against its express consent. A careful and thoughtful consideration of the full import of this ruling will disclose that any attempt to force the State to submit to suit, if carried to the ultimate, would be futile, for the reason that there are no facilities or powers anywhere to be found to enforce a judgment thus rendered. If this is a harsh rule, and if it does not have the approval of the people of the State, there is a definite way, a plain way, and a legal way, whereby it can be changed. This court has always held that the State could expressly consent to be sued. Therefore a very simple and brief enactment of the legislature giving this consent is all that is required in order to permit a suit against the State. A very interesting and persuasive argument against the rule that a State can not be sued for the torts of its officers without its express consent is found in volumes 34 and 35 of the Yale Law Journal, written by Edwin M. Borchard. But in his discussion we find that he concedes that this

rule had its origin in England, and has been followed by the courts of this country uniformly, and on page 3 of volume 34 he suggests that to lift this government immunity from suit legislation is the remedy. We quote: "With this exposition, it is hoped that it will have been demonstrated that justice and a respect for the rights of the individual demand that government, national, State and municipal, shall now adopt the necessary legislation to add the legal responsibility of the State or city for the torts of its officers."

The ruling made in division 1 would be nullified if, by indirection, the State could be subjected to suit by naming as party defendants officers and agents of the State in an action seeking to control or in any manner bind the State itself. It is difficult to describe in advance every action or suit against an officer or agent of the State that should be classified as an action against the State. The general rule that is applicable in all cases is that any case, regardless of who are named parties thereto, that could result in a judgment or decree that would in any manner affect or control the property or action of the State, in a manner not prescribed by statute, is a suit against the State and can not be brought without her consent. *Cannon* v. *Montgomery*, 184 *Ga.* 588 (192 S. E. 206); *Peeples* v. *Byrd*, supra; *Southern Mining Co.* v. *Lowe*, 105 *Ga.* 352 (31 S. E. 191); State v. President &c., 1 S. C. 63; Rotan v. State, 195 N. C. 291 (141 S. E. 732); Throckmorton v. State, 128 Misc. 599 (219 N. Y. Supp. 566); Ex Parte State of New York, 256 U. S. 490 (41 Sup. Ct. 588, 65 L. ed. 1057).

In the instant case judgment was sought against Columbus Roberts, not as an individual but as Commissioner of Agriculture,—an officer of the State. It must be admitted without argument that in the capacity of Commissioner of Agriculture Roberts owns no funds or property out of which a judgment in this case could be satisfied. Instead, every asset of every nature held and possessed by him in his official capacity is the property of the State of Georgia. It is therefore apparent that a judgment for the plaintiff Barwick in the instant case, for any amount, if satisfied at all, would be satisfied from the assets of the State, and to the extent that the State's assets were used in this manner the State itself would be bound by the judgment. It is urged by Barwick, in his brief in this court, that if he is denied judgment for the sums claimed in his suit he is entitled to have a cancellation of the lease

involved and the property embraced therein restored to him. This relief, if granted, would certainly affect the State, in that a lease now held by it would be canceled, and the State would thereby be dispossessed of property now in its possession. We hold that the instant suit is one against the State of Georgia without its consent.

■ Defendant in error insists, however, that the State by engaging in the activities alleged in his petition stripped itself of sovereignty, and thereby subjected itself to suit without its consent. In support of this contention he cites the case of *Western & Atlantic Railroad* v. *Carlton*, 28 *Ga.* 180 (2), and quotes from that decision the following: "When the State engaged in the carrying business on the W. & A. Railroad, it assumed the obligations and liabilities incident to that business when carried on by individuals, and subject to the remedies by suit against the superintendent of the road, when the claim can not be otherwise adjusted." An examination of the opinion in that case discloses that this court there referred to the consent of the State to be sued in the following language: "In such cases in England, the King is petitioned in his court of chancery, and the chancellor administers right as a matter of grace, not by compulsion. Here the usual course pursued by the citizen has been to petition the legislature; and that has been the resort when no other remedy has been provided. The legislature, however, has wisely and justly provided a remedy for persons having claims against the Western & Atlantic Railroad. They may present them for settlement to the superintendent of the railroad If a dispute should arise concerning any claim which can not be amicably settled, a claimant may bring suit against the superintendent of the railroad." Express authority to bring suit as referred to in that case was given by the legislature in 1852. Ga. L. 1851-1852, p. 110. In support of this contention he cites South Carolina v. United States, 199 U. S. 437 (26 Sup. Ct. 110, 50 L. ed. 261). The question involved in that case was not whether a sovereign State could be sued without its consent, but was whether or not the national government could exercise the authority expressly given under the constitution to "lay and collect taxes, duties, imposts, and excises." While the powers of the general government are restricted to those, and only those, conferred upon it by the States, yet such powers as are conferred are absolute and supreme. In exercising this taxing power the Federal government has ex-

empted therefrom the necessary governmental functions of the State governments. This was proper in order to maintain our system of dual governments, but, as was held in the South Carolina case, to allow this exemption to extend to every activity in which each of the several States might wish to engage might result in the destruction of the Federal government by simply having all States take over all private enterprise and business, thus leaving no subjects for taxation to support the general government. In the instant case no such question as was decided in the South Carolina case is presented, and no constitutional power of the general government is involved. With the exception of the powers surrendered to the general government, all powers are retained by the States, and each of the several States retains absolute sovereignty. This State has the sovereign right, as a State, to engage in any activity not prohibited by the State or national constitution. The determination of what governmental functions the State shall undertake with these sole limitations is made by the legislative department of the State government. In the exercise of this right the State, through its legislature, determined to establish a Department of Agriculture, and to prescribe the activities of that department, all of which are the activities of the State, and a suit affecting any of which is a suit against the State, and is prohibited if brought without the express consent of the State. The immunity thus enjoyed by the State is in no wise lifted because of the question involved. In North Carolina v. Temple, and Louisiana v. Steele, supra, the question involved was whether the State could be sued without its consent by naming an official of the State as defendant to prevent a repudiation of the bonds of the State, and the United States Supreme Court held in each instance that such suit could not be maintained.

■ The general demurrer to count 3 should have been sustained. In view of this ruling it is not necessary to pass on the assignment of error in the cross-bill on the judgment sustaining certain special demurrers.

*Judgment reversed on the main bill of exceptions. Cross-bill dismissed. All the Justices concur.*

BELL, Justice, concurring specially. I concur in the conclusion reached in this case, but I must dissent from the statement several times made in the decision to the effect that the State can not be

sued in any event without its *express* consent. It is, of course, settled beyond all doubt that the State can not be sued without its consent, and that such consent can be granted only by the legislative body; but whenever the General Assembly passes a statute or resolution authorizing any activity or contract in behalf of the State by one of its departments or officials, it may in the same enactment employ language which will admit of no construction except that such department or official may be subject to suit as the result of such activity or contract, notwithstanding there may be a total absence of express words to that effect. In such case the question whether a suit is maintainable will depend upon the construction of the statute or resolution with a view of ascertaining the intent of the lawmaking body; and if it be clear and unmistakable from the language used that it was the intention of that body to permit the action, the enactment should be so construed and applied, in accordance with the ordinary rule as to discovering and enforcing the intention of the General Assembly. This is the paramount rule for the interpretation of legislative acts, and it is one rule to which, so far as I am aware, there is no exception. Code, §§ 102-102 (9), 102-109. It is true that in one or more of the Georgia decisions cited in the opinion delivered in the present case there is language to the effect that the State can not be sued without its express consent, but an examination of each of these decisions will disclose that such language amounted to mere dictum, for the reason that the enactment under consideration did not admit of a construction even that consent was implied. And so it is in the case at bar. The plaintiff relied upon the act of the General Assembly approved February 25, 1935 (Ga. L. 1935, p. 369), authorizing the Commissioner of Agriculture to procure by purchase or otherwise necessary market sites in this State on which to conduct farmers' markets, and to establish such markets thereon without the necessity of procuring a permit from any municipality. This statute contains a number of sections, but in none of them is there any language which could reasonably be construed, even by implication, as authorizing a suit against the commissioner on account of such contracts or activities. Accordingly, it can not be said in the instant case that there was any express or implied consent that such an action as the present could be maintained, and since there can be found no implied consent it was wholly unneces-

sary for this court, in the present opinion, to deal with the question of express consent. Reference has just been made to language which is to be found in some of the earlier decisions. Similar language may be found in decisions of other courts. 25 R. C. L. 412, § 49, and cit. More appropriate expressions, however, will be found in *Western Union Tel. Co.* v. *W. & A. R. Co.*, 142 *Ga.* 532 (supra), where it was said that the State can not be sued "without special legislative authority;" and in *Cannon* v. *Montgomery*, 184 *Ga.* 588 (supra), where the pertinent language was "without its statutory consent." In 59 C. J. 303, § 460, it is stated that "statutes authorizing suit against the State are to be strictly construed, since they are in derogation of the State's sovereignty," and "Consequently it is generally essential that the consent of the State to be sued be given expressly or by clear implication." The following cases cited to this text fully support the proposition that such consent may be given by "clear implication:" Saranac Land &c. Co. *v.* Roberts (N. Y.), 68 Fed. 521; Warren Bros. Co. *v.* Kibbe (Ore.), 43 Fed. (2) 582; People *v.* Ladew, 237 N. Y. 413 (143 N. E. 238); McKeown *v.* Brown, 157 Iowa, 489 (149 N. W. 593). Aside from dicta in a few of the Georgia decisions, there is, I think, no previous decision by this court to the contrary.

In *Harrison* v. *State Highway Department*, 183 *Ga.* 290 (188 S. E. 445), it was held in effect that where the State of Georgia, through its State Highway Department, filed a condemnation suit in rem under the act of 1914 (Ga. L. 1914, p. 92, Code, § 36-1104 et seq.), against the land of an individual, and a verdict was returned, fixing the value of the land, for a stated sum, and judgment was entered thereon against the State Highway Department, the judgment was valid, although the statute under which the Highway Department proceeded contained no language amounting to an express consent that it be sued. While the decision did not in terms so declare, it was necessarily based upon implied consent, as clearly deducible from the statute. In *Regents of the University System* v. *Trust Co.*, 186 *Ga.* 498 (2) (198 S. E. 345), this court held that where a will bequeathed a sum of money to the trustees of the University of Georgia *in trust* for a named purpose, the legacy did not fail because the trust would be subject to control by a court of equity, notwithstanding the devisee, as agency of the State, might not be subject to suit without the consent of the State.

It was considered that under the statutes there cited the devisee was authorized to accept the bequest on the terms and conditions stated in the will, and in this view it was said: "Under the foregoing statutes, the agency in accepting this equitable estate on the conditions specified would necessarily subject itself to equitable jurisdiction, impliedly consenting thereby, on authority from the State, to be sued as any other trustee might have been, in reference to the subject-matter."

From what has been said, I am constrained to the view, first, that the present case does not call for any decision as to whether express consent of the State is essential to a suit against it, and that the language to that effect in the decision is obiter and should have been omitted; and, second, that regardless of this, it is incorrect to hold that the State's consent to be sued may not be given by clear implication. Being of the further opinion, however, that the statute here invoked did not grant consent even by implication, I concur in the conclusion that the action was not maintainable, and in the judgment of reversal.