318 Ga. 29
FINAL COPY

S22G1146. COLLINGTON v. CLAYTON COUNTY et al.

LAGRUA, Justice.

We granted certiorari in this case to decide two issues: first, whether official-capacity claims against a county sheriff for the purported negligent use of a covered motor vehicle are "claims against counties" as that phrase is used in OCGA § 36-11-1;[1] and second, if OCGA § 36-11-1 applies to claims of this nature, whether presentment of such a claim to the county commission satisfies a claimant's duty under this statute. The Court of Appeals concluded that OCGA § 36-11-1 does apply to such claims, but held that, to comply with the statute, a claimant must present her claim to the county sheriff, not the county commission. See *Collington v. Clayton*,

---

[1] OCGA § 36-11-1 provides that "[a]ll claims against counties must be presented within 12 months after they accrue or become payable or the same are barred, provided that minors or other persons laboring under disabilities shall be allowed 12 months after the removal of the disability to present their claims."

364 Ga. App. XXV (Case No. A22A0379) (June 2, 2022) (unpublished). While we agree with the Court of Appeals that OCGA § 36-11-1 applies to official-capacity claims against a county sheriff for the purported negligent use of a covered motor vehicle, we overrule a line of Court of Appeals case law holding that, to comply with the requirements of OCGA § 36-11-1, a claimant is required to present her claim to the county sheriff, as opposed to the county governing authority. Instead, we hold that, because a claim against a county sheriff in his official capacity for the negligent use of a covered motor vehicle is a claim against a county under OCGA § 36-11-1, presenting the claim to the county governing authority satisfies the statute's presentment requirement. We therefore affirm in part and reverse in part the judgment of the Court of Appeals.

1. *Pertinent Facts and Procedural History*

The relevant facts, as drawn from the allegations in the complaint and construed in the light most favorable to the plaintiff, are as follows:

On August 30, 2018, Mary Collington was operating her vehicle on State Route 85 in Clayton County when she was involved in a motor vehicle accident with Jesse Curney, a deputy with the Clayton County Sheriff's Department, who was operating a 2015 Dodge Charger owned by Clayton County. It is undisputed that Deputy Curney was acting in the scope of his official duties as a deputy sheriff at the time of the collision.

Based on the description of Deputy Curney's vehicle in the accident report — i.e., "2015 Dodge Charger Police" — Collington was initially under the impression that Deputy Curney was a Clayton County police officer. Accordingly, on February 12, 2019, Collington's attorney sent notice of her claims via certified mail to the Clayton County Chief of Police, the Clayton County Commissioners, and the District Attorney of Clayton County. Thereafter, on October 21, 2019, Collington filed a lawsuit against Clayton County, asserting that she suffered injuries in an automobile accident caused by the negligence of Deputy Curney,

3

who was driving a county-owned vehicle and acting in the course and scope of his employment with Clayton County at the time of the accident. Clayton County moved to dismiss the complaint on the basis that the County did not employ Deputy Curney and was not liable for his actions. On December 1, 2020, Collington voluntarily dismissed the action.

On December 21, 2020, Collington filed a renewed complaint pursuant to OCGA § 9-2-61 (a)[2] against Deputy Curney, Clayton County, and Victor Hill, in his capacity as the Sheriff of Clayton County (the "Sheriff")[3] (collectively the "Defendants") in the State

---

[2] This statute provides:

> When any case has been commenced in either a state or federal court within the applicable statute of limitations and the plaintiff discontinues or dismisses the same, it may be recommenced in a court of this state or in a federal court either within the original applicable period of limitations or within six months after the discontinuance or dismissal, whichever is later, subject to the requirement of payment of costs in the original action as required by subsection (d) of Code Section 9-11-41; provided, however, if the dismissal or discontinuance occurs after the expiration of the applicable period of limitation, this privilege of renewal shall be exercised only once.

OCGA § 9-2-61 (a). Collington asserts that the renewal lawsuit was filed within the original two-year statute of limitation as extended by this Court's COVID-19 Judicial Emergency Orders.

[3] Victor Hill was removed from office during the pendency of this

4

Court of Clayton County. On February 12, 2021, the Defendants filed a consolidated motion to dismiss Collington's complaint, arguing that: (1) Deputy Curney was an improper party pursuant to OCGA § 36-92-3 because this statute forecloses claims against a deputy in his *individual* capacity for torts allegedly committed while he was operating a covered motor vehicle in the performance of his official duties;[4] (2) Clayton County was not a proper party under

---

litigation. Sheriff Levon Allen now serves as the Sheriff of Clayton County.

[4] The pertinent portions of OCGA § 36-92-3 provide as follows:

(a) Any local government officer or employee who commits a tort involving the use of a covered motor vehicle while in the performance of his or her official duties is not subject to lawsuit or liability therefor. Nothing in this chapter, however, shall be construed to give the local government officer or employee immunity from suit and liability if it is proved that the local government officer's or employee's conduct was not within the performance of his or her official duties.

(b) A person bringing an action against a local government entity under the provisions of this chapter shall name as a party defendant the local government entity for which the officer or employee was acting and shall not name the local government officer or employee individually. In the event that the local government officer or employee is individually named for an act for which the local government entity is liable under this chapter, the local government entity for which the local government officer or employee was acting shall be substituted as the party defendant.

OCGA § 36-92-3 (a) and (b).

OCGA § 36-92-3 (b) because the County did not employ Deputy Curney and could not be liable for his actions; and (3) Collington's claims against the Sheriff were barred by sovereign immunity because, while Collington timely presented notice of her claims to Clayton County and its Board of Commissioners, Collington failed to submit timely notice of her claims to the Sheriff pursuant to OCGA § 36-11-1.

In response to the Defendants' motion to dismiss, Collington conceded that, because OCGA § 36-92-1 et seq. was amended after the subject collision occurred,[5] her claims against Deputy Curney in his individual capacity were improper and should be dismissed. See OCGA § 36-92-3 (a). Collington further asserted that the amendments to OCGA § 36-92-1 et seq., as well as then-Presiding Justice Nahmias's concurrence in *Mendez v. Moats*, 310 Ga. 114, 124 (3) (a) (852 SE2d 816) (2020) (Nahmias, P. J., concurring), suggested that Clayton County may be a proper party to be sued. Finally,

---

[5] The amendments to OCGA § 36-92-1 et seq. went into effect in July 2019.

Collington asserted that, with respect to her claims against the Sheriff, if the trial court were to conclude that the Sheriff was the proper defendant, then presenting notice of her claims to Clayton County should be deemed sufficient under OCGA § 36-11-1. While Collington admitted that she did not present notice directly to the Sheriff, she argued that the *Mendez* concurrence called into question whether the presentment notice even applied to claims involving sheriff's deputies, and if so, whether notice to the relevant county commission for claims against the sheriff satisfied that notice requirement. See id. Collington also argued that the *Mendez* concurrence seemed to conclude that there was no justification for holding that OCGA § 36-11-1 required "a plaintiff to present his official-capacity claims against a sheriff to the sheriff instead of the county governing authority," id. at 123 (3) (a), and that presentment of the notice to the "county governing authority" should be sufficient to comply with the statute. Id. at 125 (3) (a). Collington thus asserted that, even assuming the notice requirement applied in a case like

7

this one, she provided notice to Clayton County, which was sufficient under the analysis in the *Mendez* concurrence. See id.

On June 9, 2021, the trial court issued an order granting the Defendants' motion to dismiss, concluding that: (1) Collington's claims against Deputy Curney should be dismissed under OCGA § 36-92-3 (a); (2) Collington's claims against Clayton County should be dismissed because the conduct giving rise to Collington's injury was committed by a deputy sheriff, not a county officer or employee; and (3) Collington's claims against the Sheriff should be dismissed because Collington "failed to present a timely . . . notice to the Sheriff's office pursuant to OCGA § 36-11-1." Collington filed a timely notice of appeal to the Court of Appeals.[6]

On June 2, 2022, the Court of Appeals issued a decision[7] affirming the trial court's dismissal of Collington's claims against the Sheriff, vacating the dismissal of Collington's claims against the County, and remanding the case with direction. See *Collington*, 364

---

[6] Collington did not appeal the trial court's dismissal of Deputy Curney.

[7] The Court of Appeals's opinion is unpublished.

8

Ga. App. XXV, supra. In affirming the trial court's dismissal of the claims against the Sheriff, the Court of Appeals determined that Collington did not present notice of her claims to the Sheriff as required by OCGA § 36-11-1, and thus, she could not proceed with those claims. In vacating the trial court's dismissal of Collington's claims against Clayton County, the Court of Appeals noted that, in responding to the Defendants' motion to dismiss in the trial court, Collington contended that Clayton County might be the proper party to be sued if the 2019 amendments to OCGA § 36-92-1 et seq. were applicable in the present case. The Court of Appeals determined that, because the trial court did not address or issue a definitive ruling on that question, the trial court's dismissal of Collington's claims against Clayton County should be vacated. The Court of Appeals remanded the case for the trial court to rule on whether Clayton County was a proper defendant in this case.[8]

---

[8] We do not decide who the proper defendant is to be sued in this case. We granted certiorari to decide two limited issues — whether OCGA § 36-11-1 applies to official-capacity claims against a county sheriff for the negligent use of a covered motor vehicle, and if so, whether the proper presentment of

Collington then filed her petition for a writ of certiorari in this Court.[9] We granted certiorari to address whether OCGA § 36-11-1 applies to official-capacity claims against a county sheriff for the negligent use of a covered motor vehicle, and if so, whether the proper presentment of such claims to the county commission satisfies the claimant's duty under the statute.

2. *Analysis*

(a) The answer to the first question is yes — OCGA § 36-11-1 applies to official-capacity claims against a county sheriff for the negligent use of a covered motor vehicle because such a claim is a claim against the county itself. As explained below, this question is one of statutory construction, and critical to the question of construction here is the historical context of OCGA § 36-11-1, including the legal context against which the statutory language was enacted. See *Camp v. Williams*, 314 Ga. 699, 703 (2) (b) (879

_____

such claims to the county commission satisfies the claimant's duty under the statute.

[9] Clayton County also filed a petition for a writ of certiorari on June 22, 2022, which we denied.

SE2d 88) (2022). In other words, discerning the meaning of OCGA § 36-11-1 requires us to determine whether, when this statute was enacted, "claims against counties" would have been understood to include official-capacity claims against the appropriate county officials.

"When construing a statute, we must presume that the General Assembly meant what it said and said what it meant." *Bell v. Hargrove*, 313 Ga. 30, 32 (2) (867 SE2d 101) (2021) (citation and punctuation omitted). "Accordingly, we afford the statutory text its plain and ordinary meaning, viewing the statutory text in the context in which it appears, and reading the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would." Id. (citation and punctuation omitted). "[A]s we have said many times before when interpreting legal text, we do not read words in isolation, but rather in context." *Camp*, 314 Ga. at 703 (2) (b) (citation and punctuation omitted). So, "even if words are apparently plain in meaning, they must not be read in

11

isolation and instead, must be read in the context of the [statute] as a whole." Id. (citation and punctuation omitted). "The primary determinant of a text's meaning is its context, which includes the structure and history of the text and the broader context in which that text was enacted, including statutory and decisional law that forms the legal background of the written text." *City of Guyton v. Barrow*, 305 Ga. 799, 805 (3) (828 SE2d 366) (2019).

The text of OCGA § 36-11-1 is brief: in pertinent part, it provides that "[a]ll claims against counties must be presented within 12 months after they accrue or become payable or the same are barred[.]" Id. First enacted in 1860, "[t]he statutory presentment requirement of OCGA § 36-11-1 has been a part of our law for more than 150 years." *Croy v. Whitfield County*, 301 Ga. 380, 381 (2) (801 SE2d 892) (2017). See Code 1863, § 479 (providing that "[a]ll claims against counties must be presented within twelve months after they accrue or become payable, or the same are barred . . ."). And the presentment statute was last amended, without material change, in

1933. See Code 1933, § 23-1602 (providing that "[a]ll claims against counties must be presented within 12 months after they accrue or become payable, or the same are barred . . .").

To begin, we look to decisions issued by this Court in and around the time the presentment statute was enacted in 1860 to ascertain how the statute was then understood. See *Elliott v. State*, 305 Ga. 179, 182 (II) (A) (824 SE2d 265) (2019) (examining the "original public meaning" of a constitutional or statutory provision is "an interpretive principle" that we apply to discern how the provision was understood at the time it was adopted).[10] At that time, claims against counties could only be brought in accordance with strict statutory guidelines — guidelines which instituted a "uniform practice" of naming "the person or persons charged with the duty of attending to the affairs of the county [as] the defendant or defendants to the suits." *Conyers v. Commrs. of Roads and Revenues*

---

[10] In looking to these cases, we acknowledge that many of them were decided in different contexts. But, because they were cases decided around the time that the presentment statute was enacted, they are useful evidence of the meaning of the language of that statute.

*of Bartow County*, 116 Ga. 101, 103 (42 SE 419) (1902). Initially, "[t]he proper way to sue the county" was "to proceed against the inferior court of the county." Id. at 102 (citing Irwin's Code 1867, § 526). However, "[t]he inferior courts were abolished by the constitution of 1868," and in 1872, the General Assembly "passed an act" providing that "the proper way to sue a county would be to sue either the ordinary or the board of county commissioners, as the case might be, in their official capacity." Id. at 103.

Several other cases issued by the Court during that timeframe similarly suggested that bringing claims against the appropriate government officials in their official capacities was a recognized way to proceed against a governmental entity — be it the State or one of its counties. See, e.g., *Western & Atlantic R. v. Carlton*, 28 Ga. 180, 182-183 (2)-(3) (1859) (noting that, where the State embarked on an enterprise to run a railroad and a plaintiff suffered damages to property being carried by the railroad, the plaintiff could "present [its claims] for settlement to the superintendent of the railroad" as

14

an agent of the State and "bring suit against the superintendent of the railroad" to recover for its damages); *Southern Mining Co. v. Lowe,* 105 Ga. 352, 354-356 (31 SE 191) (1898) (noting that, in a lawsuit filed against the prison commissioners of Georgia where the plaintiff sought to enjoin the commissioners from entering into a contract for the hiring of penitentiary convicts, the commissioners had been "sued as officials, having no personal interest in the subject-matter of the suit," and thus, "[t]he injunction sought, if granted, would be against representatives of the State in their official capacity, and therefore neither more nor less than a judicial proceeding against the State itself"); *Roberts v. Barwick*, 187 Ga. 691, 694-695 (1) (1 SE2d 713) (1939) (holding that a lawsuit filed against the commissioner of agriculture in his official capacity seeking an accounting and injunction was a suit against the State itself).

In *Roberts*, the Court observed that "[i]t is difficult to describe in advance every action or suit against an officer or agent of the

State that should be classified as an action against the State." *Roberts*, 187 Ga. at 695 (2). Thus, in an effort to provide some guidance, the *Roberts* Court explained that

> [t]he general rule that is applicable in all cases is that any case, regardless of who are named parties thereto, that could result in a judgment or decree that would in any manner affect or control the property or action of the State, in a manner not prescribed by statute, is a suit against the State[.]

Id. The Court expounded upon this rule, noting that, in *Roberts*, a judgment was being sought against the commissioner of agriculture, "not as an individual," but as "an officer of the State." Id. The Court further noted that the commissioner of agriculture "owns no funds or property out of which a judgment in this case could be satisfied[;] [i]nstead, every asset of every nature held and possessed by him in his official capacity is property of the State of Georgia." Id. Thus, "a judgment for the plaintiff . . . in the instant case, for any amount, if satisfied at all, would be satisfied from the assets of the State, and to the extent the State's assets were used in this manner[,] the State itself would be bound by the judgment." Id.

Subsequent cases issued by this Court relied on the *Roberts* rule to similarly conclude that, "[w]here a suit is brought against an officer or agency of the State" and "the State, while not a party to the record, is the real party against which relief is sought, so that a judgment for the plaintiff . . . will operate to control the action of the state or subject it to liability, the suit is in effect one against the state." *Musgrove v. Ga. R. & Banking Co.*, 204 Ga. 139, 155 (49 SE2d 26) (1948). See also, e.g., *Hennessy v. Webb*, 245 Ga. 329, 330 (264 SE2d 878) (1980) (holding that "in instances where an officer or agent of the [S]tate is sued in his official capacity" and "a judgment can be rendered controlling the action or property of the State in a manner not prescribed by statute," any such suit "is a suit against the State") (citation and punctuation omitted); *Gilbert v. Richardson*, 264 Ga. 744, 750 (4) (452 SE2d 476) (1994) (noting that "suits against public employees in their official capacities are in reality suits against the state") (citation and punctuation omitted).

17

As these precedents show, by the time the presentment statute was enacted in 1860, it would have been understood that claims against a government could include official capacity claims against at least some of the government's officials; this was inherent within the meaning of the statute when it was adopted. That meaning is to be applied in light of the ensuing precedent, which further developed how and when suing a county official made the claims in that lawsuit qualify as claims against the county itself. This development was based — in part — on changes to the broader statutory context in which the presentment statute operates. And all of that contextual development leaves us today with a presentment statute that, in requiring claims against counties to be presented within 12 months, is properly understood to apply to official capacity claims against county officials, as well. See OCGA § 36-11-1.

The general rule articulated in *Roberts* also applies to official-capacity claims filed against a county sheriff for losses arising from the negligent use of a covered motor vehicle. See OCGA § 36-92-1 et

seq. Sheriffs are county officials, see Ga. Const. of 1983, Art. IX, Sec. I, Par. III, and generally, nothing about a sheriff's relationship with a county makes him or her different in kind for purposes of applying the general rule. Additionally, local government entities — including counties — are subject to liability for losses caused by the "negligence of a local government entity officer or employee using a covered motor vehicle while carrying out his or her official duties or employment." OCGA § 36-92-1 (1). And "[a] sheriff, deputy sheriff, or other agent, servant, or employee of a sheriff's office" is defined as a "[l]ocal government officer or employee" for purposes of this statute. OCGA § 36-92-1 (4) (B). Moreover, local governmental entities — including counties — are the ones who provide for the payment of claims, settlements, judgments, and the associated costs arising out of losses caused by covered motor vehicles. See OCGA § 36-92-4 (a). And, here, the record reflects that Clayton County owned the vehicle Deputy Curney was driving when the motor vehicle accident at issue occurred. See OCGA § 36-92-1 (2) (A)

19

(providing that "[c]overed motor vehicle means: . . . [a]ny motor vehicle owned by the local government entity"). Therefore, any "judgment or decree" issued in this case would "affect or control the property or action of" Clayton County and thus is a suit against the County. *Roberts*, 187 Ga. at 695 (2).

Accordingly, we conclude that official-capacity claims against a county sheriff for a deputy's allegedly negligent use of a county-owned vehicle are claims against the county itself, and thus, the presentment requirement of OCGA § 36-11-1 applies to such claims, including Collington's official-capacity claims against the Sheriff in this case. See *Mendez*, 310 Ga. at 122 (2) (b).

(b) Turning to the second question before us, we also answer this question in the affirmative — a claimant's duty under OCGA § 36-11-1 is satisfied by presenting notice to the appropriate county governing authority of her official-capacity claims against a county sheriff for the negligent use of a covered motor vehicle. OCGA § 36-11-1 "does not specify to whom presentment must be made," and

20

"our appellate courts have consistently construed OCGA § 36-11-1 and its predecessors to require presentment of claims to the county governing authority." *Mendez*, 310 Ga. at 122 (3) (a) (citing *Croy*, 301 Ga. at 381 (2)). Before the Court of Appeals's decision in *Davis v. Morrison*, 344 Ga. App. 527, 532 (2) (810 SE2d 649) (2018), "no Georgia court had ever held that the presentment of claims to the county governing authority itself was inadequate to satisfy OCGA § 36-11-1, or that presentment to an entity other than the county governing authority was required." *Mendez*, 310 Ga. at 123 (3) (a).

"There is no justification for holding, contrary to more than a century of precedent, that presentment of claims against counties covered by OCGA § 36-11-1 to the county governing authority is insufficient to comply with the statute," *Mendez*, 310 Ga. at 125 (3) (a), and we overrule any cases from the Court of Appeals holding otherwise. See, e.g., *Moats v. Mendez*, 349 Ga. App. 811, 814 (2) (824 SE2d 808) (2019); *Davis*, 344 Ga. App. at 532 (2). Because a claim against a sheriff in his official capacity for the negligent use of a

21

covered motor vehicle is a claim against a county under OCGA § 36-11-1, "presentment to the county governing authority of a claim to which OCGA § 36-11-1 applies satisfies the statute's presentment requirement."[11] *Mendez*, 310 Ga. at 122 (3).

3. *Conclusion*

Accordingly, Collington's timely presentment of notice of her claims to the Clayton County Commissioners satisfied her burden under OCGA § 36-11-1. We thus reverse in part the judgment of the Court of Appeals and remand the case for the Court of Appeals to direct the trial court to conduct further proceedings consistent with this opinion.

*Judgment affirmed in part and reversed in part. All the Justices concur.*

---

[11] We do not decide here whether presenting a claim to the Sheriff would also satisfy the presentment requirement of OCGA § 36-11-1.

Decided January 17, 2024.

Certiorari to the Court of Appeals of Georgia — 364 Ga. App. XXV.

*Penn Law, Darren W. Penn, John D. Hadden; Morgan & Morgan Atlanta, R. Walker Garrett; Benjamin F. Windham*, for appellant.

*Freeman Mathis & Gary, Jack R. Hancock, A. Ali Sabzevari, Wesley C. Jackson, Jacob E. Daly*, for appellees.

*Charles M. Cork III; Walker Hulbert Gray & Moore, Kellye C. Moore*, amici curiae.